IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YUNSEO CHUNG,<br><br>*Plaintiff-Petitioner*,<br><br>v.<br><br>Donald TRUMP, *et al.*,<br><br>*Defendants-Respondents*. | Case No. 25-cv-4212 |

**DECLARATION OF GRAEME BLAIR, Ph.D. AND DAVID HAUSMAN, J.D., Ph.D.**

We, Graeme Blair and David Hausman, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. Graeme Blair is an associate professor of political science at UCLA. He studies policing and how to make social science research more credible, ethical, and useful. He teaches courses on research design and data analysis for undergraduates and Ph.D. students. His book, *Research Design in the Social Sciences*, was published by Princeton University Press in 2023, and his book *Crime, Insecurity, and Community Policing* was published by Cambridge University Press in 2024. He received a Ph.D. in politics from Princeton University and a B.A. in political science from Reed College. He is the recipient of the Leamer-Rosenthal Prize in Open Social Science.

2. David Hausman is an assistant professor of law at UC Berkeley. He has conducted data analysis as a consulting expert in numerous immigration cases. He has also published scholarly research using immigration enforcement datasets, evaluating, for example, the effect of sanctuary policies (*Proceedings of the National Academy of Sciences*), the effect of an algorithmic no-release policy (*Journal of Law and Economics*, forthcoming), the effect of the first Trump administration's efforts to control the immigration courts (*Journal of Law, Economics and Organization*), and the effect of appeals on immigration court outcomes (*University of Pennsylvania Law Review*). He received his J.D. and Ph.D. in political science from Stanford University and clerked for Judge Stephen Williams on the D.C. Circuit Court of Appeals.

3. Hausman is the Faculty Director of the Deportation Data Project, where Blair is the Deputy Director for Data. That Project collects, analyzes, and posts public, anonymized U.S. government immigration enforcement datasets. In addition to posting publicly available data on its website, the Project uses the Freedom of Information Act to obtain datasets from federal government agencies and publishes analysis of the datasets it receives.

4. We submit this declaration in support of the Brief of Over 110 Immigration Lawyers, Law Professors, and Scholars as Amici Curiae in the above-captioned case.

5. For our calculations in this declaration, we used the CASE dataset posted by the Executive Office of Immigration Review ("EOIR") in its FOIA Library.[1] We are familiar with the spreadsheets and the data contained therein.

6. The spreadsheets track immigration proceedings and record the detention status of individuals whose cases are pending or complete in the immigration courts and the Board of Immigration Appeals ("BIA"). They include, among other things, the immigration charges against each person, their entry date, the date on the Notice to Appear ("NTA"), the date and time of every hearing scheduled in the case, the outcome of the case, and, when applicable, an appeal. The spreadsheets do not include personally identifiable information, such as names or A-numbers.

7. The most recent EOIR CASE dataset, which was posted in early March 2025, contains 11,720,036 unique cases. Each "case" in the EOIR CASE dataset does not necessarily correspond to a different, unique individual. For example, if a removal proceeding against a specific individual ends, and later, DHS issues a new charging document against them, two "cases" corresponding with that same individual would appear in the EOIR CASE dataset.

8. Counsel for Amici Curiae asked us to summarize the data in the CASE dataset for cases where the Department of Homeland Security ("DHS") has alleged that a noncitizen violated the Immigration and Nationality Act ("INA") § 237(a)(4)(C)(i) or, prior to 1996, INA § 241(a)(4)(C)(i).

9. We identified a list of relevant case numbers from two sources.

10. First, we accessed the charges table in the CASE dataset, and we searched by charge.[2] We found 14 cases where DHS charged a noncitizen with removability under INA § 237(a)(4)(C)(i) or § 241(a)(4)(C)(i). In 7 cases, INA § 237(a)(4)(C)(i) or § 241(a)(4)(C)(i) was the only charge invoked.

---

[1] Available at https://www.justice.gov/eoir/foia-library-0. Because of the sheer volume of the spreadsheets, which would be millions of pages in length if printed or saved in paginated format, it is impractical to submit copies to the Court. As a result, pursuant to Federal Rule of Evidence 1006, this declaration contains a summary of the contents of the spreadsheets.

[2] We accounted for differences in punctuation and capitalization.

11. Second, counsel for Amici Curiae shared a written BIA decision, *Matter of Khalifa*, 21 I&N Dec. 107 (BIA 1995), with us. According to the BIA decision, the noncitizen in that case was charged with removability under INA § 241(a)(4)(C)(i) on December 16, 1994. That case did not appear in our search of the CASE dataset, likely because that charge was added when the NTA was amended. We found the case in a separate search based on the information found in the BIA decision.[3]

12. With these 15 cases, we constructed a table of information presented below. We started with the most recent proceeding for each case from the proceedings table in the CASE dataset and retained the date DHS issued the charging document to the noncitizen ("OSC date"; the Notice to Appear was previously called an Order to Show Cause), custody status (whether they were detained), and a code representing the Immigration Judge's ("IJ") decision in the proceeding. We then merged in the charges for each proceeding from the charges table, which resulted in one to three charges that were entered in at least one proceeding for these cases. We then merged by case number to include details from the cases table, including the date of entry into the United States. We then merged by case number to the appeals table to add the BIA decision date. We then constructed a date representing the final decision date in the case ("Decision date") by either taking the completion date from the last proceeding or, if it was later, the BIA decision date from the Table of Appeals.

13. There are 4 cases in the EOIR CASE dataset where DHS charged a noncitizen with removability under INA § 237(a)(4)(C)(i) or § 241(a)(4)(C)(i) and the date on the NTA was **on or after January 1, 2000**. Out of those 4 cases, 2 cases were ones in which INA § 237(a)(4)(C)(i) or § 241(a)(4)(C)(i) was the only charge invoked.

14. Table 1, below, shows these data for all 15 cases, including the case ID, entry date (date of entry into the United States), OSC date (date DHS issued the charging document to the noncitizen), custody status (whether the immigrant was detained throughout the case, detained and then released during the case, or never detained during the case), the decision date (final decision date either from the proceedings table or appeals table as

---

[3] We conducted a search in the proceedings table based on dates that appeared in the BIA opinion and found an apparently matching record. We believe this record corresponds to the case in the BIA decision for several reasons. First, in the cases table, the date of entry of the noncitizen is recorded as December 1, 1994. In the BIA decision, it states, referring to the noncitizen: "He entered the United States as a nonimmigrant visitor on December 1, 1994…." Second, the nationality recorded in the CASE dataset is Saudi Arabia. The BIA decision states, consonantly: "The record reflects that the respondent is 38-year-old native and citizen of Saudi Arabia." Third, in the proceedings table, the "OSC Date" or date DHS issued the charging document to the noncitizen is December 16, 1994. This is the same day noted in the BIA decision, which reads: "On December 16, 1994, an Order to Show Cause was issued in his case." Fourth, in the same table, the base city code is "SFR," representing San Francisco. The BIA decision indicates the case was based there also; it is labeled at the top: "File AXX XX7 661-San Francisco."

The CASE dataset does not reflect the relevant charge and thus did not come up in our initial search, most likely because the table simply was not updated when the first charges were withdrawn and the new, relevant charge was issued. In the charges table, the noncitizen in that case, ID 2559790, was recorded as being charged under INA § 241(a)(1)(A) and § 241(a)(4)(B). This is likely because when the NTA was first filed, DHS did not charge the noncitizen with deportability under 241(a)(4)(C)(i), as confirmed in the BIA decision. The original charges were, according to that decision, the same as those in the CASE dataset, for deportability under § 241(a)(1)(A) and (B) as well as 241(a)(4)(B). The BIA decision states that those charges were withdrawn on January 5, 1995. According to the decision, DHS then charged the noncitizen instead with deportability under § 241(a)(4)(C) the same day.

described above), the decision (the final decision of the IJ after any appeals, if applicable), and the charges from the charges table.

| Case ID | Entry date | OSC date | Custody status | Decision date | Decision | Charges First | Second | Third |
|---|---|---|---|---|---|---|---|---|
| 2454560 | 1977-10-17 | 1991-03-15 | Never detained | 1992-01-15 | Relief/rescinded | 241a04ci | | |
| 2529143 | 1992-02-17 | 1999-08-04 | Detained | 2000-07-13 | Removed | 237a04ai | 237a04ci | |
| 3000162 | 1994-02-01 | 1994-10-28 | Released | 2005-09-20 | Relief/rescinded | 241a01b | 241a04ci | |
| 3000168 | 1994-02-01 | 1994-10-28 | Never detained | 2005-09-20 | Relief/rescinded | 241a01b | 241a04ci | |
| 3000175 | 1994-02-01 | 1994-10-28 | Never detained | 1997-04-14 | Administrative closing - other | 241a01b | 241a04ci | |
| 3042103 | 1989-07-01 | 1995-01-04 | Never detained | 1995-08-02 | Relief/rescinded | 241a04ci | | |
| 3130892 | 2001-11-16 | 2003-10-15 | Detained | 2003-10-27 | Voluntary departure | 237a01b | 237a04ci | |
| 3357300 | 1995-02-23 | 1995-07-18 | Never detained | 1995-12-08 | Case terminated by IJ | 241a04ci | | |
| 3457035 | 1994-12-24 | 1995-04-11 | Released | 2003-09-24 | Deported | 241a04ci | | |
| 3466804 | 1994-04-23 | 1996-11-26 | Never detained | 1997-05-08 | Case terminated by IJ | 241a01b | 241a01ci | 241a04ci |
| 3476658 | 1995-03-02 | 1995-12-21 | Detained | 1999-10-14 | Case terminated by IJ | 241a04ci | | |
| 5573574 | 2005-10-02 | 2006-08-03 | Released | 2008-09-03 | Case terminated by IJ | 237a04ci | | |
| 7760620 | [missing] | 2015-09-15 | Detained | 2015-10-28 | Removed | 237a01ci | 237a04ci | 237a01b |
| 9108003 | 2018-06-02 | 2019-08-21 | Never detained | [missing] | [missing] | 237a04ci | | |
| 2559790 | 1994-12-01 | 1994-12-16 | Detained | 1995-04-26 | Deported | 241a01b | 241a04b | |

April 8, 2025

_____
GRAEME BLAIR
Los Angeles, California

_____
DAVID HAUSMAN
Berkeley, California

4