UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YUNSEO CHUNG,

                 Plaintiff-Petitioner,

      - against -

DONALD J. TRUMP; *et al.*,

                 Defendants-Respondents.

No. 25 Civ. 2412 (NRB)


# DEFENDANTS-RESPONDENTS' COMBINED MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS AND IN OPPOSITION TO PLAINTIFF-PETITIONER'S' MOTION FOR A PRELIMINARY INJUNCTION


MATTHEW PODOLSKY
Acting United States Attorney for the
Southern District of New York
*Attorney for Defendants-Respondents*
86 Chambers Street, 3rd Floor
New York, New York 10007


JEFFREY OESTERICHER
BRANDON M. WATERMAN
Assistant United States Attorneys
    – Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................................1

BACKGROUND ...................................................................................................1

I.     REMOVAL PROCEEDINGS AND JUDICIAL OVERSIGHT .......................................1

II.    THIS ACTION...........................................................................................3

      A.    Relevant Factual Background ...............................................................3

      B.    Procedural Background.........................................................................4

ARGUMENT .......................................................................................................5

I.     THE COURT SHOULD DISMISS THIS ACTION ............................................6

      A.    This Court Lacks Jurisdiction under the INA and REAL ID Act...........................6

            1.    8 U.S.C. § 1252(g) Bars Judicial Review of ICE's Decision to Commence Removal Proceedings Against Petitioner ...............................6

            2.    8 U.S.C. §§ 1252(a)(5) and (b)(9) Channel All of Petitioner's Challenges to the Courts of Appeals.........................................11

      B.    Petitioner's Pleading Suffers from Other Defects .................................15

II.    THE COURT SHOULD DENY PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION ...................................................................18

      A.    Legal Standard for a Preliminary Injunction .........................................18

      B.    Likelihood of Success on the Merits.....................................................19

      C.    Irreparable Harm ...............................................................................19

      D.    Balance of the Equities and Public Interest ..........................................20

      E.    The Court Should Require Bond............................................................21

CONCLUSION...................................................................................................22

# TABLE OF AUTHORITIES

PAGE(S)

**Cases**

*Aguilar v. ICE,*
510 F.3d 1 (1st Cir. 2007) ................................................................ 13, 16, 20

*Ajlani v. Chertoff,*
545 F.3d 229 (2d Cir. 2008) ................................................................ 9, 13

*Ali v. Barr,*
464 F. Supp. 3d 549 (S.D.N.Y. 2020) ................................................................ 14

*Alvarez v. ICE,*
818 F.3d 1194 (11th Cir. 2016) ................................................................ 8

*Arevalo-Guasco v. Dubois,*
788 F. App'x 25 (2d Cir. 2019) ................................................................ 21

*Brenntag Int'l Chem., Inc. v. Bank of India,*
175 F.3d 245 (2d Cir. 1999) ................................................................ 19

*Calcano-Martinez v. INS,*
232 F.3d 328 (2d Cir. 2000) ................................................................ 12

*Clark v. Martinez,*
543 U.S. 371 (2005) ................................................................ 7

*Cooper Butt ex rel Q.T.R. v. Barr,*
954 F.3d 901–09 (6th Cir. 2020) ................................................................ 10

*Delgado v. Quarantillo,*
643 F.3d 52 (2d Cir. 2011) ................................................................ 13, 14, 16

*Demore v. Kim,*
538 U.S. 510 (2003) ................................................................ 21

*DSE, Inc. v. United States,*
169 F.3d 21 (D.C. Cir. 1999) ................................................................ 22

*E.F.L. v. Prim,*
986 F.3d 959 (7th Cir. 2021) ................................................................ 7

*El-Shifa Pharmaceutical Industries Co. v. United States,*
607 F.3d 836 (D.C. Cir. 2010) ................................................................ 17-18

*Elgharib v. Napolitano,*
600 F.3d 597–04 (6th Cir. 2010) ................................................................ 9

*Gross v. German Foundation Indus. Initiative,*
456 F.3d 363 (3d Cir. 2006) ................................................................ 18

*Harisiades v. Shaughnessy,*
    342 U.S. 580 (1952) ............................................................................................... 18

*Humphries v. Various Fed. U.S. INS Emps.,*
    164 F.3d 936 (5th Cir. 1999) .............................................................................. 10

*Hussain v. Gonzales,*
    492 F. Supp. 2d 1024 (E.D. Wisc. 2007) ................................................ 19-20, 20

*INS v. St. Cyr,*
    533 U.S. 289 (2001) ................................................................................................. 2

*J.E.F.M. v. Lynch,*
    837 F.3d 1026 (9th Cir. 2016) .............................................................................. 13

*Jennings v. Rodriguez,*
    538 U.S. 281 ................................................................................................... 14, 21

*Jimenez-Angeles v. Ashcroft,*
    291 F.3d 594 (9th Cir. 2002) ................................................................................. 8

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
    511 U.S.375 (1994) ................................................................................................. 6

*Kumar v. Holder,*
    No. 12-cv-5261 (SJF), 2013 WL 6092707 (E.D.N.Y. Nov. 18, 2013) ............... 11

*Laker Airways Ltd. v. Sabena, Belgian World Airlines,*
    731 F.2d 909 (D.C. Cir. 1984) ............................................................................. 19

*Massieu v. Reno,*
    91 F.3d 416 (3d Cir. 1996) ................................................................................... 15

*Mathews v. Diaz,*
    426 U.S. 67 (1976) ................................................................................................. 18

*Munaf v. Geren,*
    553 U.S. 674 (2008) ............................................................................................... 18

*Nikolic v. Decker,*
    No, 19 Civ. 6047 (LTS), 2019 WL 5887500 (S.D.N.Y. Nov. 12, 2019) ............ 14

*Nixon v. United States,*
    506 U.S. 224 (1993) ............................................................................................... 17

*Nken v. Holder,*
    556 U.S. 418 (2009) ......................................................................................... 20, 21

*Obado v. Superior Ct. of New Jersey Middlesex Cnty.,*
    No. 21-cv-10420 (FLW), 2022 WL 283133 (D.N.J. Jan. 31, 2022) ..................... 8

*P.L. v. ICE,*
    No. 19 Civ. 1336 (ALC), 2019 WL 2568648 (S.D.N.Y. June 21, 2019) ............ 14

*Qiao v. Lynch*,
  672 F. App'x 134 (2d Cir. 2017) ..................................................................... 15

*Rauda v. Jennings*,
  55 F.4th 773 (9th Cir. 2022) ......................................................................... 7-8

*Reno v. American-Arab Anti-Discrimination Comm.*,
  525 U.S. 471 (1999) ........................................................................ 7, 8, 10, 12

*Rosario v. Holder*,
  627 F.3d 58 (2d Cir. 2010) .............................................................................. 13

*Ruiz v. Mukasey*,
  552 F.3d 269 (2d Cir. 2009) ............................................................................ 13

*Saadulloev v. Garland*,
  No. 3:23-cv-106, 2024 WL 1076106 (W.D. Pa. Mar. 12, 2024) ........... 8-9, 9, 14

*Schneider v. Kissinger*,
  412 F.3d 190 (D.C. Cir. 2005) ......................................................................... 17

*Selvarajah v. U.S. Dep't of Homeland Security*,
  No. 10 Civ. 4580 (JGK), 2010 WL 4861347 (S.D.N.Y. Nov. 30, 2010) ........... 14

*Sheldon v. Sill*,
  49 U.S. 441, 448 (1850) .................................................................................... 6

*Sissoko v. Rocha*,
  509 F.3d 947 (9th Cir. 2007) ............................................................................. 8

*Sophia v. Decker*,
  No. 19 Civ. 9599 (LGS), 2020 WL 764279 (S.D.N.Y. Feb. 14, 2020) ....... 14-15

*State of California v. United States*,
  104 F.3d 1086 (9th Cir. 1997) ......................................................................... 17

*Taal v. Trump*,
  No. 3:25-cv-335 (ECC), 2025 WL 926207 (N.D.N.Y. Mar. 27, 2025) ............. 14

*Tazu v. Att'y Gen. United States*,
  975 F.3d 292 (3d Cir. 2020) .......................................................................... 7, 9

*United States v. Gonzalez-Roque*,
  301 F.3d 39–48 (2d Cir. 2002) .......................................................................... 2

*United States v. Martinez-Fuerte*,
  428 U.S. 543 (1976) ......................................................................................... 20

*Vargas v. United States Dep't of Homeland Sec.*,
  No. 1:17-cv-356, 2017 WL 962420 (W.D. La. Mar. 10, 2017) ................... 10-11

*Velasco Lopez v. Decker*,
  978 F.3d 842 (2d Cir. 2020) ....................................................................... 14, 21

*Whiteman v. Dorotheum GmbH*,
    431 F.3d 57 (2d Cir. 2005) ............................................................. 17

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ................................................................. 18, 19

*Xiao Ji Chen v. U.S. Dep't of Justice*,
    434 F.3d 144 (2d Cir. 2006) ............................................................. 13

*Xiao Ji Chen v. U.S. DOJ*,
    471 F.3d 315 (2d Cir. 2006) ............................................................. 2

*Zivtofsky v. Clinton*,
    566 U.S. 189 (2012) ................................................................. 16, 17

*Zundel v. Gonzales*,
    230 F. App'x 468 (6th Cir. 2007) ............................................................. 10

## **Statutes and Regulations**

5 U.S.C. § 701 ............................................................................... 16

5 U.S.C. § 704 ............................................................................... 16

8 U.S.C. § 1101 ............................................................................ 1, 2

8 U.S.C. § 1226 ............................................................................. 21

8 U.S.C. § 1227 ...................................................................... 3, 4, 5, 18, 19

8 U.S.C. § 1229 ............................................................................. 1

8 U.S.C. § 1229a ......................................................................... 1, 11

8 U.S.C. § 1251 ............................................................................ 15

8 U.S.C. § 1252 ......................................................................... passim

28 U.S.C. § 1331 ........................................................................... 12

28 U.S.C. § 2241 ........................................................................ 16, 20

8 C.F.R. § 1003.1 ............................................................................ 2

8 C.F.R. § 1003.19 ...................................................................... 19, 20

## PRELIMINARY STATEMENT

Through this action, the petitioner Yunseo Chung ("Petitioner") seeks to preemptively enjoin and prevent the government from commencing removal proceedings against her. But this Court lacks subject-matter jurisdiction over this action. Congress has unambiguously stripped federal courts of jurisdiction over challenges to the commencement of removal proceedings and has relatedly directed that any and all challenges to removal proceedings may be heard only upon the conclusion of removal proceedings and in the appropriate court of appeals through a petition for review. Regardless of how Petitioner styles this action or her claims, they are all, at bottom, a challenge to removal proceedings, over which this Court lacks jurisdiction. Accordingly, the Court should dismiss this action and deny Petitioner's motion for a preliminary injunction.

## BACKGROUND

### I.    Removal Proceedings and Judicial Oversight

Under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, removal proceedings generally provide the exclusive means for determining whether an alien is both removable from the United States and eligible for any relief or protection from removal. *See* 8 U.S.C. § 1229a. Section 1229, which is entitled "[i]nitiation of removal proceedings," explains that an alien must be given written notice of the initiation of removal proceedings though a charging document called a "Notice to Appear." 8 U.S.C. § 1229. To commence removal proceedings, the U.S. Department of Homeland Security ("DHS") files the Notice to Appear, the charging document, with the immigration court.

Removal proceedings are conducted before an immigration judge. *Id.* § 1229a(a)(1). "At the conclusion of [a removal] proceeding the immigration judge shall decide whether an alien is removable from the United States." *Id.* § 1229a(c)(1)(A). An immigration judge, however, does not have the last word in an alien's immigration proceedings. An alien can (and must, to preserve

a claim) appeal an immigration judge's decisions to the BIA.  *See United States v. Gonzalez-Roque*, 301 F.3d 39, 47–48 (2d Cir. 2002); 8 C.F.R. § 1003.1 (setting out the organization, jurisdiction, and powers of the BIA).  An alien's order of removal does not become final until the BIA affirms such an order, or the time permitted the alien to appeal to the BIA runs.  8 U.S.C. § 1101(a)(47)(B).

An alien may seek judicial review of the BIA's decision by filing a petition for review in the appropriate court of appeals.  Congress has repeatedly legislated to ensure that a court of appeals is the exclusive Article III forum for an alien to challenge his immigration proceedings. Specifically, in 1996, Congress "comprehensive[ly]" amended the INA through passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA").  *INS v. St. Cyr*, 533 U.S. 289, 291 (2001).  Among other reforms, IIRIRA eliminated district court jurisdiction to oversee the removal of aliens and provided that the courts of appeals oversee the immigration system exclusively through petitions for review.  *See* 8 U.S.C. § 1252 (codifying IIRIRA's judicial review provisions, including later revisions discussed *infra*).  Following the Supreme Court's ruling in *St. Cyr*, Congress again amended the INA through the REAL ID Act of 2005.  *Xiao Ji Chen v. U.S. DOJ*, 471 F.3d 315, 326 (2d Cir. 2006).  The REAL ID Act repeatedly inserted language into the relevant provisions of 8 U.S.C. § 1252, clarifying that their jurisdiction-stripping effects apply notwithstanding any other provision of law, whether "statutory or nonstatutory." REAL ID Act, Pub. L. No. 109-13, § 106, 119 Stat. 231 (2005) (quoted language codified at 8 U.S.C. § 1252(a)(2)(A), (B), (C), (a)(4), (a)(5), (b)(9)).  Thus, Congress has repeatedly legislated to design, implement, and refine a three-tier administrative and judicial system—namely, the immigration court, the BIA, and the court of appeals—to determine if and when an alien is removable from the United States.  And Congress expressly excluded the district courts from playing a role in this review process.

## II.    This Action

### A.    Relevant Factual Background

Petitioner, a native and citizen of South Korea, was admitted to the United States on an F-2 visa in June 2009.  *See* Declaration of Marina Vides ("Vides Decl.") ¶ 3.  She adjusted to lawful permanent resident status in June 2021.  *Id.*  Petitioner is currently a college student enrolled at Columbia University in New York.  *See* Complaint and Petition for Writ of Habeas Corpus (ECF No. 1) ("Pet.") ¶¶ 2, 25.

On March 5, 2025, the New York City Police Department arrested and charged Petitioner with Obstruction of Governmental Administration in the Second Degree, Disorderly Conduct, and Trespass.  Vides Decl. ¶ 4.  She was later arraigned in New York County Criminal Court on the Obstruction of Governmental Administration and Disorderly Conduct charges.  *Id.* ¶ 5.

On March 7, 2025, U.S. Secretary of State Marco Rubio personally determined that Petitioner is a removable alien under INA § 237(a)(4)(C)(i), 8 U.S.C. § 1227(a)(4)(C)(i), finding that her presence and activities would have potentially serious adverse foreign policy consequences and would compromise a compelling U.S. foreign policy interest.  Vides Decl. ¶ 6 & Ex. A; *see also* 8 U.S.C. § 1227(a)(4)(C) ("An alien whose presence or activities in the United States the Secretary of State has reasonable grounds to believe would have potentially serious adverse foreign policy consequences for the United States is deportable.").  U.S. Immigration and Customs Enforcement ("ICE") was notified of the Secretary's determination on March 8, 2025.  Vides Decl. ¶ 6.  Based on that determination, Petitioner is removable from the United States under 8 U.S.C. § 1227(a)(4)(C)(i); that violation of immigration law is the basis for ICE's enforcement action.  *Id.* ¶ 7.  On March 8, 2025, the Acting New York City Field Office Director of ICE signed an administrative arrest warrant directing that Petitioner be arrested and taken into custody for removal proceedings.  *Id.* ¶ 8 & Ex. B.  On the same day, Columbia University officials were

3

advised of the administrative arrest warranted issued for Petitioner.  *Id.* ¶ 9.  Columbia University refused to allow ICE to access University property to effect Petitioner's arrest without a judicial warrant.  *Id.*

Between March 8, 2025, and the present, ICE has attempted to locate Petitioner in the New York City and Yorktown, Virginia areas to perform a civil arrest and process her for removal proceedings before an immigration judge, including serving Petitioner with a copy of a Notice to Appear, notifying her of the charge of removability to commence removal proceedings.  *Id.* ¶ 10. Between March 8 and 13, 2025, ICE made efforts to locate her at her last known address in New York City without success.  *Id.*  ICE understands that this Court's Temporary Restraining Order currently prohibits Petitioner from being arrested and detained.  *Id.*

On March 9, 2025, ICE agents attempted to contact Petitioner on her cell phone, without success.  *Id.* ¶ 11. Also on March 9, ICE agents visited the residence of Petitioner's parents in Yorktown, Virginia and spoke with her father in an effort to locate Petitioner.  *Id.* ¶ 12.  On March 12 and 13, 2025, ICE issued administrative subpoenas to Columbia University for certain information in an effort to locate Petitioner.  *Id.* ¶¶ 13, 14.

On March 13, 2025, ICE obtained a judicial search and seizure warrant for Petitioner's residence at Columbia University.  *Id.* ¶ 15.  On the same date, ICE agents executed that search and seizure warrant, but they were unable to locate Petitioner or any evidence at the property.  *Id.* ¶ 16.  As of today's date, ICE has been unable to locate Petitioner and has been unable to serve the charging document on her for purposes of commencing removal proceedings.  *Id.* ¶ 17.

## B.    Procedural Background

On March 24, 2025, Petitioner filed this action to effectively enjoin ICE from commencing removal proceedings against her.  Pet. (ECF No. 1).  She brings four claims: (1) a First Amendment claim challenging the constitutionality of the "Foreign Policy Ground" of 8 U.S.C. § 1227(a)(4)(C),

as well as the "Rubio Determination, the Policy, and the targeting of [Petitioner]," *id.* ¶¶ 164-76; (2) a Fifth Amendment claim challenging the constitutionality of the "Foreign Policy Ground" of 8 U.S.C. § 1227(a)(4)(C), as well as the "Policy and Rubio Determination," *id.* ¶¶ 178-84; (3) an Administrative Procedure Act ("APA") claim, *id.* ¶ 186; and (4) a non-delegation doctrine claim, *id.* ¶¶ 188-90. As relief, Petitioner seeks (i) an order vacating and setting aside respondents' alleged "Policy of targeting noncitizens for removal based on First Amendment protected speech and advocacy for Palestinian rights," (ii) an order vacating and setting aside "the Rubio Determination as applied to [Petitioner]," (iii) an order enjoining respondents "from taking any enforcement action against [her]," and (iv) a declaration that respondents' "actions to arrest, detain, or transfer [Petitioner] violate the First Amendment, the Due Process Clause of the Fifth Amendment, the INA, the APA, the *Accardi* doctrine, and the non-delegation doctrine." *Id.* at 45-46 (Prayer for Relief).

Also on March 24, 2025, Petitioner filed a motion for a temporary restraining order ("TRO") and preliminary injunction to enjoin the government from detaining her during the pendency of this action. Pet'r Mot. (ECF Nos. 6, 8). On March 25, 2025, the Court entered a "status quo TRO," temporarily enjoining ICE from detaining Petitioner until the Court decides Petitioner's preliminary injunction motion. *See* TRO (ECF No. 19). The Court also set a briefing schedule on Petitioner's motion for a preliminary injunction. ECF No. 20.

## ARGUMENT

The Court should dismiss this action for lack of subject-matter jurisdiction, as it presents an impermissible challenge to removal proceedings. *See infra* Part I. As discussed more fully below, Congress has withdrawn district court jurisdiction over the challenges presented in this action. Notwithstanding the lack of district court jurisdiction, Petitioner is not without an Article III forum to challenge any eventual removal order that may issue: after exhausting administrative remedies in the immigration court and at the BIA, she may file a petition for review of a final

removal order with the appropriate court of appeals, in which she may assert legal and constitutional challenges to her removal order and removal proceedings. The Court should also deny Petitioner's motion for a preliminary injunction to prevent her arrest, detention, and removal because, among other reasons, the Court lacks jurisdiction over this action. *See infra* Part II.

## I.    THE COURT SHOULD DISMISS THIS ACTION

### A.    This Court Lacks Jurisdiction under the INA and REAL ID Act

The Court lacks subject-matter jurisdiction over Petitioner's claims.[1] The jurisdiction stripping provisions of 8 U.S.C. § 1252 deprive this Court of jurisdiction over Petitioner's claims, which are all, at bottom, challenges to her removal. Specifically, Petitioner's claims are barred by 8 U.S.C. §§ 1252(a)(5) and (b)(9), which deprive this Court of jurisdiction to review actions taken or proceedings brought to remove aliens from the United States, and channel such challenges to the courts of appeals, and § 1252(g), which deprives this Court of jurisdiction to review claims arising from the decision or action to "commence proceedings."

### 1.    8 U.S.C. § 1252(g) Bars Judicial Review of ICE's Decision to Commence Removal Proceedings Against Petitioner

By its plain terms, 8 U.S.C. § 1252(g) eliminates district court jurisdiction over challenges to commencing removal proceedings. Petitioner seeks to challenge the government's decisions to charge her with removability and detain her, which arise "from the decision [and] action" to

---

[1] The jurisdiction of the federal courts is presumptively limited. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Sheldon v. Sill*, 49 U.S. 441, 448 (1850) ("Congress, having the power to establish the courts, must define their respective jurisdictions."). They "possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen*, 511 U.S. at 377 (internal citations omitted); *see also Sheldon*, 49 U.S. at 449 ("Courts created by statute can have no jurisdiction but such as the statute confers."). As relevant here, Congress divested district courts of jurisdiction to review challenges relating to removal proceedings and instead vested only the courts of appeals with jurisdiction over such claims.

"commence proceedings." 8 U.S.C. § 1252(g). Regardless of the framing of her claims, this Court does not have jurisdiction over such challenges.

Section 1252(g), as amended by the REAL ID Act, specifically deprives courts of jurisdiction, including habeas corpus jurisdiction, to review "any cause or claim by or on behalf of an alien arising from the decision or action by [the Secretary of Homeland Security] to [1] *commence proceedings*, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter."[2] *Id.* (emphasis added). Section 1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title."[3] Though this section "does not sweep broadly," *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 296 (3d Cir. 2020), its "narrow sweep is firm," *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021). Except as provided in § 1252, courts "cannot entertain challenges to the enumerated executive branch decisions or actions." *Id.*

Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999) ("*AADC*"). Indeed, Section 1252(g) was designed to protect the Executive's discretion and avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 487; *see, e.g., Rauda v. Jennings*, 55 F.4th

---

[2] The Attorney General once exercised all of that authority, but much of that authority has been transferred to the Secretary of Homeland Security. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005). Many of the INA's references to the Attorney General are now understood to refer to the Secretary. *Id.*

[3] Congress initially passed § 1252(g) in the IIRIRA, Pub. L. 104-208, 110 Stat. 3009. In 2005, Congress amended § 1252(g) by adding "(statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title" after "notwithstanding any other provision of law." REAL ID Act of 2005, Pub. L. 109-13, § 106(a), 119 Stat. 231, 311.

7

773, 777-78 (9th Cir. 2022) ("Limiting federal jurisdiction in this way is understandable because Congress wanted to streamline immigration proceedings by limiting judicial review to final orders, litigated in the context of petitions for review.").  Indeed, Section 1252(g)'s language protects the government's authority to make "discretionary determinations" over whether and when to commence removal proceedings against an alien, "providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed."  *AADC*, 525 U.S. at 485.

Section 1252(g) prohibits district courts from hearing challenges to decisions and actions about *whether* and *when* to commence removal proceedings.  *See, e.g.*, *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) ("We construe § 1252(g) . . . to include not only a decision in an individual case *whether* to commence, but also *when* to commence, a proceeding."); *see also, e.g.*, *Sissoko v. Rocha*, 509 F.3d 947, 950-51 (9th Cir. 2007) (holding that § 1252(g) barred review of a Fourth Amendment false arrest claim that "directly challenge[d] [the] decision to commence expedited removal proceedings."); *Obado v. Superior Ct. of New Jersey Middlesex Cnty.*, No. 21-cv-10420 (FLW), 2022 WL 283133, at *3 (D.N.J. Jan. 31, 2022) ("Because [p]etitioner challenges the decision to commence and adjudicate removal proceedings against him, the [c]ourt lacks jurisdiction to direct [respondents] to terminate [p]etitioner's NTA and/or halt his removal proceedings.").

The scope of § 1252(g) also bars district courts from hearing challenges to the *method* by which the Secretary of Homeland Security chooses to commence removal proceedings.  *See, e.g.*, *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and also to review "ICE's decision to take him into custody and to detain him during removal proceedings"); *Saadulloev v.*

*Garland*, No. 3:23-cv-106, 2024 WL 1076106, at *3 (W.D. Pa. Mar. 12, 2024) ("The Government's decision to arrest [petitioner], clearly is a decision to 'commence proceedings' that squarely falls within the jurisdictional bar of § 1252(g)."). The act of arresting an alien to serve a charging document and initiate removal proceedings is an "action . . . to commence proceedings" that this Court lacks jurisdiction to review. *See, e.g.*, *id.*; *Tazu*, 975 F.3d at 298-99 ("Tazu also challenges the Government's re-detaining him for prompt removal. . . . While this claim does not challenge the Attorney General's *decision* to execute his removal order, it does attack the *action* taken to execute that order. So under § 1252(g) and (b)(9), the District Court lacked jurisdiction to review it.").

As Section 1252(g) prohibits judicial review of "any cause or claim" that arises from the commencement of removal proceedings, this provision applies to constitutional as well as statutory claims. *See, e.g.*, *Tazu*, 975 F.3d at 296-98 (holding that any constitutional claims must be brought in a petition for review, not a separate district court action); *Elgharib v. Napolitano*, 600 F.3d 597, 602–04 (6th Cir. 2010) (noting that "a natural reading of 'any other provision of law (statutory or nonstatutory)' includes the U.S. Constitution" and finding additional support for the court's interpretation from the remainder of the statute). Indeed, the Second Circuit explained, "[w]hile the statute creates an exception for 'constitutional claim or questions of law,' jurisdiction to review such claims is vested exclusively in the courts of appeals and can be exercised only after the alien has exhausted administrative remedies." *Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) (internal citations omitted); *see also id.* ("Accordingly, the district court lacked jurisdiction to review Ajlani's constitutional challenges to his removal proceedings, and it would be premature for this court to do so now."); 8 U.S.C. § 1252(a)(2)(D).

9

Moreover, the Supreme Court held that a prior version of § 1252(g) barred claims similar to those brought here.  *See AADC*, 525 U.S. at 487-92.  In *AADC*, the respondents had alleged that the "INS was selectively enforcing the immigration laws against them in violation of their First and Fifth Amendment rights."  *Id.* at 473-74.  The Supreme Court noted "an admission by the Government that the alleged First Amendment activity was the basis for selecting the individuals for adverse action."  *Id.* at 488 n.10.  The respondents argued to the Supreme Court that a lack of immediate review would have a "chilling effect" on their First Amendment rights.  *Id.* at 488.  Nonetheless, the Supreme Court held that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g)."  *Id.* at 487; *see also Cooper Butt ex rel Q.T.R. v. Barr*, 954 F.3d 901, 908–09 (6th Cir. 2020) (holding that the district court did not have jurisdiction to review a claim that the plaintiffs' father "was removed 'based upon ethnic, religious and racial bias' in violation of the Equal Protection Clause of the Fifth Amendment").

Petitioner alleges that the government seeks to arrest and commence removal proceedings against her in retaliation for her exercise of the First Amendment, but that does not remove her claims from Section 1252(g)'s reach.  *See, e.g., AADC*, 525 U.S. at 487-92 (holding that Section 1252(g) deprived district court of jurisdiction over claim that certain aliens were targeted for deportation in violation of the First Amendment.); *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007) (explaining that First Amendment challenge related to immigration enforcement action "is properly characterized as a challenge to a discretionary decision to 'commence proceedings' . . . [and] is insulated from judicial review"); *Humphries v. Various Fed. U.S. INS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (ruling that § 1252(g) prohibited review of an alien's First Amendment claim based on decision to put him into exclusion proceedings); *Vargas v. United States Dep't of*

*Homeland Sec.*, No. 1:17-cv-356, 2017 WL 962420, at *3 (W.D. La. Mar. 10, 2017) (Claim that ICE "violated her First Amendment right to free speech by arresting her and initiating her removal after she made statements to the media . . . is barred by 8 U.S.C. § 1252(g)."); *Kumar v. Holder*, No. 12-cv-5261 (SJF), 2013 WL 6092707, at *6 (E.D.N.Y. Nov. 18, 2013) (Claim of initiation of proceedings in retaliatory manner "falls squarely within Section 1252(g) . . . [and] [t]he pending immigration proceedings are the appropriate forum for addressing petitioner's retaliation claim in the first instance."). As such, judicial review of Petitioner's claims that the commencement of removal proceedings against her is unconstitutional is barred by Section 1252(g).

### 2.  8 U.S.C. §§ 1252(a)(5) and (b)(9) Channel All of Petitioner's Challenges to the Courts of Appeals

Under the INA, removal proceedings generally provide the exclusive means for determining whether an alien is both removable from the United States and eligible for any relief or protection from removal. *See* 8 U.S.C. § 1229a. In 8 U.S.C. § 1252, Congress channeled into the statutorily prescribed removal process all legal and factual questions—including constitutional issues—that may arise from the removal of an alien, with judicial review of those decisions vested exclusively in the courts of appeals. *See AADC*, 525 at 483. District courts play no role in that process. Consequently, this Court lacks jurisdiction over Petitioner's claims, which are all, at bottom, challenges to removal proceedings. Petitioner must first raise all her challenges through the administrative removal proceedings, and then, if necessary, in the appropriate court of appeals.

To start, 8 U.S.C. § 1252(b)(9) eliminates this Court's jurisdiction over Petitioner's claims by channeling all challenges to immigration proceedings (and removal orders) to the courts of appeals:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien* from the United States under this subchapter shall be available only in judicial review of a final order under this

> section. Except as otherwise provided in this section, no court shall have jurisdiction . . . by any . . . provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added).  Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance.  *AADC*, 525 U.S. at 483.  As the Second Circuit explained, § 1252(b)(9) requires claims like Petitioner's to be consolidated in one proceeding before the Court of Appeals:

> Congress enacted [8 U.S.C. § 1252(b)(9)] for the important purpose of consolidating all claims that may be brought in removal proceedings into one final petition for review of a final order in the court of appeals. . . .  Before [8 U.S.C. § 1252(b)(9)], only actions attacking the deportation order itself were brought in a petition for review while other challenges could be brought pursuant to a federal court's federal question subject matter jurisdiction under 28 U.S.C. § 1331.  Now, by establishing "exclusive appellate court" jurisdiction over claims "arising from any action taken or proceeding brought to remove an alien," all challenges are channeled into one petition.

*Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000).  By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."  8 U.S.C. §§ 1252(a)(5), (b)(2).

Moreover, Section 1252(a)(5) reiterates that a petition for review is the exclusive means for judicial review of immigration proceedings:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) [concerning aliens not admitted to the United States].

8 U.S.C. § 1252(a)(5).  "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through

the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016); *see id.*
at 1035 ("§§ 1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-practices
challenges . . . whenever they 'arise from' removal proceedings"); *accord Ruiz v. Mukasey*, 552
F.3d 269, 274 n.3 (2d Cir. 2009) (only when the action is "unrelated to any removal action or
proceeding" is it within the district court's jurisdiction); *cf. Xiao Ji Chen v. U.S. Dep't of Justice*,
434 F.3d 144, 151 n.3 (2d Cir. 2006) (a "primary effect" of the REAL ID Act is to "limit all aliens
to one bite of the apple" (internal quotation marks omitted)).

Critically, "[§] 1252(b)(9) is a judicial channeling provision, not a claim-barring one."
*Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007).  Indeed, 8 U.S.C. § 1252(a)(2)(D) provides that
"[n]othing . . . in any other provision of this chapter . . . shall be construed as precluding review of
constitutional claims or questions of law raised upon a petition for review filed with an appropriate
court of appeals in accordance with this section."  *See also Ajlani*, 545 F.3d at 235 ("jurisdiction
to review such claims is vested exclusively in the courts of appeals").  The petition-for-review
process before the court of appeals thus ensures that aliens have a proper forum for claims arising
from their immigration proceedings and "receive their 'day in court.'" *J.E.F.M.*, 837 F.3d at 1031-
32; *see also Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010) ("The REAL ID Act of 2005
amended the [INA] to obviate . . . Suspension Clause concerns" by permitting judicial review of
"nondiscretionary" BIA determinations and "all constitutional claims or questions of law.").

In evaluating the reach of subsections (a)(5) and (b)(9), the Second Circuit has explained
that "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff
is seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011).  Those provisions divest
district courts of jurisdiction to review both direct and indirect challenges to removal orders, which
includes any challenge that is inextricably intertwined with the final order of removal that precedes

13

issuance of any removal order, *id.*, as well as decisions to detain for purposes of removal or for proceedings, *Jennings v. Rodriguez*, 538 U.S. 281, 294-95 (§ 1252(b)(9) includes challenges to "decision to detain [alien] in the first place or to seek removal," which precedes any issuance of an NTA). Here, Petitioner's claims challenge the government's ability to arrest and detain her in the first place and to place her in removal proceedings, which all arise from the government's efforts to remove her. *See, e.g.*, *Jennings*, 538 U.S. at 294-95 (§ 1252(b)(9) includes challenges to "decision to detain [alien] in the first place or to seek removal," which precedes any issuance of an NTA); *see also Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (finding that 8 U.S.C. § 1226(e) did not bar review in that case because the petitioner did not challenge "his initial detention"); *Saadulloev*, 2024 WL 1076106, at *3 (recognizing that there is no judicial review of the threshold detention decision). As such, the Court lacks jurisdiction over this action. *See, e.g.*, *Ali v. Barr*, 464 F. Supp. 3d 549, 557-58 (S.D.N.Y. 2020) (Buchwald, J.) (lack of jurisdiction over issues arising from removal proceedings); *Nikolic v. Decker*, No, 19 Civ. 6047 (LTS), 2019 WL 5887500, at *3 (S.D.N.Y. Nov. 12, 2019) (same); *P.L. v. ICE*, No. 19 Civ. 1336 (ALC), 2019 WL 2568648, at *2 (S.D.N.Y. June 21, 2019) (collecting cases) ("Where immigrants in removal proceedings directly or indirectly challenge removal orders or proceedings, the Second Circuit and district courts within the circuit have held district courts do not have jurisdiction."); *Selvarajah v. U.S. Dep't of Homeland Security*, No. 10 Civ. 4580 (JGK), 2010 WL 4861347, at *4 (S.D.N.Y. Nov. 30, 2010) ("challenges to actions that are part of [an ongoing] removal proceeding have been treated in the same manner as challenges to removal orders, for jurisdictional purposes"); *see also Taal v. Trump*, No. 3:25-cv-335 (ECC), 2025 WL 926207, at *2 (N.D.N.Y. Mar. 27, 2025) ("Plaintiffs have not established that the Court has subject matter jurisdiction over Taal's claim for a temporary restraining order enjoining his removal proceedings."); *Sophia v. Decker*, No. 19 Civ.

9599 (LGS), 2020 WL 764279, at *2 (S.D.N.Y. Feb. 14, 2020) (applying § 1252(b)(9) to strip district court of jurisdiction over challenge to whether the petitioner was legally in removal proceedings); *cf. Qiao v. Lynch*, 672 F. App'x 134, 135 (2d Cir. 2017) ("Like the district court, we conclude that the IJ's challenged order reopening removal proceedings against Qiao is inextricably linked to the removal proceedings, as well as any removal order that may ultimately result from reopening those proceedings.").

The Third Circuit's decision in *Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996) (Alito, J.), is instructive. There, in a case concerning the same charge of removability (under the predecessor statute, 8 U.S.C. § 1251(a)(4)(C)(i)), the Third Circuit reversed a district court's order declaring the statute unconstitutional and enjoining deportation proceedings, because the petitioner was required to first exhaust administrative remedies through the immigration court and then file a petition for review. *Massieu*, 91 F.3d at 417. The court specifically noted that for "an alien attempting to prevent an exclusion or deportation proceeding from taking place in the first instance," he must avail himself of the administrative procedures. *Id.* at 421. This case was decided prior to IIRIRA and the REAL ID Act, but as discussed above, those laws withdrew district court jurisdiction and made the courts of appeals the exclusive forum to hear such challenges. Thus, this Court should reach the same result as *Massieu*: Petitioner's claims should be dismissed for lack of jurisdiction; she must present her challenges in the administrative removal process, and then, if necessary, to the appropriate court of appeals.

**B.    Petitioner's Pleading Suffers from Other Defects**

For the foregoing reasons, the Court should dismiss this action for lack of subject-matter jurisdiction. Independent of the above, Petitioner's claims suffer from other defects that render them subject to dismissal.

First, Petitioner cannot invoke habeas relief.  One of the requirements of 28 U.S.C. § 2241 is that the petitioner be in "custody."  The habeas statute provides, in relevant part, "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [she] is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241.  But Petitioner is not in custody.  Just the opposite.  She filed this action pre-emptively to prevent her detention by ICE. And while there are circumstances outside of actual physical detention that satisfy the "in custody" requirement, none are present here.

Second, Petitioner cannot invoke the APA because she has an adequate remedy at law: the petition for review process.  The APA permits judicial review of agency action only when, *inter alia*, statutes do not "preclude judicial review," 5 U.S.C. § 701(a)(1), and "there is no other adequate remedy in a court."  5 U.S.C. § 704.  Here, Congress barred district court review of Petitioner's claims in Section 1252.  Accordingly, no claim may lie under the APA.  *See, e.g.*, *Delgado*, 643 F.3d at 55 (no APA claim because § 1252 barred judicial review).  Moreover, Congress channeled into the statutorily prescribed administrative removal procedure review of all legal, constitutional, and factual questions that may arise from the removal of an alien, with judicial review of those decisions vested exclusively in the courts of appeals.  As a petition for review provides an adequate remedy at law for Petitioner's claims, as set out in 8 U.S.C. § 1252, an APA may not be asserted in this Court for that reason as well.  *See Aguilar*, 510 F.3d at 11 ("[§] 1252(b)(9) is a judicial channeling provision, not a claim-barring one").

Third, Petitioner's challenge to and request for the Court to vacate the Secretary of State's foreign policy determination invokes an unreviewable political question.  The political question doctrine is an "exception" to the "general" rule that "the Judiciary has a responsibility to decide cases properly before it."  *Zivtofsky v. Clinton*, 566 U.S. 189, 194-95 (2012).  A nonjusticiable

political question occurs when "there is 'a textually demonstrable constitutional commitment of the issue to a coordinate political department[] or a lack of judicially discoverable and manageable standards for resolving it.'" *Nixon v. United States*, 506 U.S. 224, 228 (1993) (quoting *Baker v. Carr*, 369 U.S. 186, 217 (1962)). "In such a case," the political question doctrine deprives a court of "the authority to decide the dispute before it." *Zivtofsky*, 566 U.S. at 195.

The political question doctrine requires "a case-by-case inquiry." *Whiteman v. Dorotheum GmbH*, 431 F.3d 57, 70 (2d Cir. 2005). A claim is nonjusticiable if it satisfies any one of "six independent tests" the Supreme Court enumerated in *Baker v. Carr*:

> [1] a textually demonstrable constitutional commitment of the issue to a coordinate political department; or [2] a lack of judicially discoverable and manageable standards for resolving it; or [3] the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or [4] the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or [5] an unusual need for unquestioning adherence to a political decision already made; or [6] the potentiality of embarrassment from multifarious pronouncements by various departments on one question.

*Whiteman*, 431 F.3d at 70 (quoting *Baker v. Carr*, 369 U.S. at 217); *see Schneider v. Kissinger*, 412 F.3d 190, 194 (D.C. Cir. 2005) ("To find a political question, we need only conclude that one factor is present, not all.").

Here, Petitioner's challenge to the Secretary's foreign policy determination is non-justiciable. Necessarily, Petitioner's requested injunction sits at the intersection of two issues textually committed to the political branches of the government: (1) foreign affairs, *see State of California v. United States*, 104 F.3d 1086, 1091 (9th Cir. 1997) ("the issue of protection of the States from invasion implicates foreign policy concerns which have been constitutionally committed to the political branches"); *see also El-Shifa Pharmaceutical Industries Co. v. United States*, 607 F.3d 836, 842 (D.C. Cir. 2010) ("The political question doctrine bars our review of

claims that, regardless of how they are styled, call into question the prudence of the political branches in matters of foreign policy or national security constitutionally committed to their discretion."); and (2) immigration policy, *see Mathews v. Diaz*, 426 U.S. 67, 81 (1976) ("the responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government.").  As observed by the Supreme Court, "any policy towards aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government.  Such matters are so exclusively entrusted to the political branches of government as to be largely immune from judicial inquiry or interference." *Harisiades v. Shaughnessy*, 342 U.S. 580, 588-89 (1952).

Additionally, there is simply no manageable standard on what constitutes "potentially serious adverse foreign policy consequences."  8 U.S.C. § 1227(a)(4)(C)(i).  Nor is there a manageable standard on what constitutes a "compelling foreign policy interest."  8 U.S.C. § 1227(a)(4)(C)(ii).  Petitioner is asking this Court to "displac[e] the Executive in its foreign policy making role" and to reverse a political decision that has already been made.  *Gross v. German Foundation Indus. Initiative*, 456 F.3d 363, 389-90 (3d Cir. 2006).  But second-guessing foreign policy decisions is exactly what the political doctrine was meant to insulate from judicial review. *Id.* at 390.

## II.    THE COURT SHOULD DENY PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION

### A.    Legal Standard for a Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  Preliminary injunctive relief is an "extraordinary and drastic remedy," *Munaf v. Geren*, 553 U.S. 674, 689 (2008), and should be

awarded only "upon a clear showing that the plaintiff is entitled to such relief," *Winter*, 555 U.S. at 22. A plaintiff seeking a preliminary injunction must establish that (1) she is likely to succeed on the merits, (2) she is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in her favor, and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20.

### B.    Likelihood of Success on the Merits

For all the reasons set forth above, the Petitioner cannot establish a likelihood of success on the merits, as the Court lacks subject-matter jurisdiction over all of Petitioner's claims. Additionally, Petitioner cannot bring a habeas action because she is not "in custody," and she also cannot bring claims under the APA because her claims in this Court are barred by statute, and she has an adequate remedy at law. Thus, the Court need proceed no further in its analysis of Petitioner's motion for a preliminary injunction. *See, e.g.*, *Laker Airways Ltd. v. Sabena, Belgian World Airlines*, 731 F.2d 909, 921 (D.C. Cir. 1984). ("If there is no justification for the court's exercise of jurisdiction, the injunctive relief should necessarily fail.").

### C.    Irreparable Harm

Petitioner falls short of establishing "irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. Irreparable harm exists "where, but for the grant of equitable relief, there is a substantial chance that upon final resolution of the action the parties cannot be returned to the positions they previously occupied." *Brenntag Int'l Chem., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). Petitioner, who seeks, among other things, to prevent her detention by ICE pending removal proceedings, does not meet that standard.

Moreover, if detained, Petitioner may request that an immigration judge determine whether she is properly subject to removal under 8 U.S.C. § 1227(a)(4). *See* 8 C.F.R. § 1003.19(h)(2)(ii); *see also Hussain v. Gonzales*, 492 F. Supp. 2d 1024, 1033 (E.D. Wisc. 2007), *aff'd sub nom.*

*Hussain v. Mukasey*, 510 F.3d 739 (7th Cir. 2007). She can submit evidence and legal authority as to whether she is properly included within the removability charge to allow the immigration judge to make the determination in the first instance. *Hussain*, 492 F. Supp. 2d at 1033. If Petitioner disagrees with that determination, she can seek review before the BIA. 8 C.F.R. § 1003.19(f); *see also Hussain*, 492 F. Supp. 2d at 1033 (discussing BIA's decision determining proper detention authority and custody review process). Relatedly, Petitioner can move to terminate her removal proceedings before the immigration judge, and if successful, that would also result in her release from detention. And if Petitioner is detained and she believes her detention is unlawful (for example, because she has not received a bond hearing), she can file a habeas petition under 28 U.S.C. § 2241 in her district of confinement. In short, Petitioner has not shown that she will be irreparably harmed if she is detained and required to exhaust her claims administratively in immigration court. *See, e.g.*, *Aguilar*, 510 F.3d at 14 (noting that irreparable harm in the context of enduring a delay by exhausting administrative remedies may be shown where doing so "might trigger a severe medical setback" or where a "plaintiff's physical condition and dependence on disability benefits would damage him in way not recompensable through retroactive payments" (cleaned up)).

### D.    Balance of the Equities and Public Interest

The balance-of-equities factors "merge" because the government is the opposing party, and the government's interest *is* the public interest. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, this factor weighs in the government's favor and against granting injunctive relief. It is well settled that the public interest in the enforcement of the United States' immigration laws is significant. *See, e.g.*, *United States v. Martinez-Fuerte*, 428 U.S. 543, 556-58 (1976); *Nken*, 556 U.S. at 435. There is "always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. That principle extends to the prompt resolution of determining removability because

"[t]he continued presence of an alien lawfully deemed removable undermines the streamlined removal proceedings IIRIRA established, and 'permit[s] and prolong[s] a continuing violation of United States law.'"  *Id.* (quoting *AADC*, 525 U.S., at 490).  Granting the preliminary injunctive relief that Petitioner seeks would impair the government's ability to carry out its official duties, which is contrary to the public interest.

By evading arrest and seeking an injunction preventing ICE from detaining her, Petitioner frustrates the public interest in enforcing the immigration laws and in determining her removability.  Petitioner's detention by ICE has a valid statutory basis, *see* 8 U.S.C. § 1226(a) (authorizing ICE to arrest and detain an alien "pending a decision on whether the alien is to be removed from the United States"), and "detention during [removal] proceedings is a constitutionally valid aspect of the process," *Demore v. Kim*, 538 U.S. 510, 511 (2003) (citing *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)); *accord Velasco Lopez*, 978 F.3d at 848 (same).  Relatedly, this Court's inquiry during the TRO hearing regarding whether Petitioner poses a danger to the community or a flight risk is not the correct analysis; Congress has removed federal court jurisdiction over challenges to discretionary detention decisions.  *See* 8 U.S.C. § 1226(e); *see also Jennings*, 583 U.S. at 295; *Demore*, 538 U.S. at 516; *cf. Arevalo-Guasco v. Dubois*, 788 F. App'x 25, 27 (2d Cir. 2019).  In short, it is not the district court's judgment regarding risk of flight and danger to the community that governs whether ICE may permissibly detain an alien pending removal proceedings.  Holding aliens to the proper procedures regarding detention pending removal proceedings is in the public interest.

### E.    The Court Should Require Bond

Finally, if the Court grants Petitioner's requested preliminary injunction—which it should not for all of the foregoing reasons—it should order security.  Under Federal Rule of Civil Procedure 65(c), the Court may issue a preliminary injunction "only if the movant gives security"

for "costs and damages sustained" by Respondents if they are later found to "have been wrongfully enjoined." Fed. R. Civ. P. 65(c). If the Court issues a preliminary injunction here, it should require Petitioner to post an appropriate bond commensurate with the scope of any injunction. *See DSE, Inc. v. United States*, 169 F.3d 21, 33 (D.C. Cir. 1999).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss this action for lack of subject-matter jurisdiction and deny Petitioner's motion for a preliminary injunction.

Dated:  April 11, 2025
        New York, New York

                                     Respectfully submitted,

                                     MATTHEW PODOLSKY
                                     Acting United States Attorney for the
                                     Southern District of New York
                                     Attorney for Defendants-Respondents

                          By:     /s/ *Brandon M. Waterman*
                                     JEFFREY OESTERICHER
                                     BRANDON M. WATERMAN
                                     Assistant United States Attorneys
                                     86 Chambers Street, 3rd Floor
                                     New York, New York 10007
                                     Tel.:  (212) 637-2695/2743
                                     jeffrey.oestericher@usdoj.gov
                                     brandon.waterman@usdoj.gov

**Certificate of Compliance**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 7,126 words.