# Exhibit B

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

YUNSEO CHUNG,

            Plaintiff,

       v.                                    25 CV 02412

DONALD J. TRUMP, in his
official capacity as President
of the United States, et al.,

            Defendants.
                                             Conference
------------------------------x
                                             New York, N.Y.
                                             March 25, 2025
                                             3:00 p.m.
Before:

               HON. NAOMI REICE BUCHWALD,

                                             District Judge


                         APPEARANCES

MAIN STREET LEGAL SERVICES, INC.
     Attorneys for Plaintiff
BY:  RAMZI KASSEM
     NAZ AHMAD

LAW OFFICE OF MATTHEW BRAY
     Attorney for Plaintiff
BY:  NATHAN YAFFE

EMERY, CELLI, BRINCKERHOFF, ABADY, WARD & MAAZEL, LLP
     Attorney for Plaintiff
BY:  SONYA LEVITOVA

DEPARTMENT OF JUSTICE, UNITED STATES ATTORNEY'S OFFICE
     Attorney for Respondents
BY:  BRANDON MATTHEW WATERMAN

UNITED STATES ATTORNEY'S OFFICE, SOUTHERN DISTRICT OF NEW YORK
     Attorney for Respondents
BY:  JEFFREY STUART OESTERICHER
```

1           THE DEPUTY CLERK:  25 Civ. 2412, *Chung v. Trump, et al.*

3           Is the plaintiff present and ready to proceed?

4           MR. KASSEM:  Yes, your Honor.

5           THE COURT:  Could you state your name?

6           MR. KASSEM:  Good afternoon, your Honor.  Ramzi Kassem, plaintiff's counsel, here for Yunseo Chung.

8           THE DEPUTY CLERK:  Are defendants present and ready to proceed?

10          MR. OESTERICHER:  Yes, your Honor.  Jeff Oestericher, Assistant United States Attorney for the Southern District of New York, with me is my colleague, Brandon Waterman, also an AUSA.

14          THE COURT:  Very good.

15          All right.  As you know, this case was filed last night I believe and assigned to me this morning.  I would like to just focus on the request for a TRO today.

18          So, could I begin by asking the government what its position is on the requested TRO?

20          MR. OESTERICHER:  Thank you, your Honor.

21          The government is unwilling to consent to the TRO.  We oppose it.

23          THE COURT:  Why would that be?

24          MR. OESTERICHER:  I think -- we have consulted with our client, and the client is unwilling to stand down.  We also

```
 1   believe that there are jurisdictional impediments for the Court
 2   to order the relief that the plaintiff is requesting.
 3             THE COURT:  But you've not yet had a chance to submit
 4   a brief on what you are suggesting are jurisdictional
 5   impediments.  I would obviously assume you want to do that, and
 6   I would of course like to receive it, because none immediately
 7   come to mind.  This requested TRO is simply a status quo TRO,
 8   and even if Ms. Chung had been arrested for a felony in the
 9   criminal context, there is the concept of bail.
10             To analogize to bail, we consider two things:  Risk of
11   flight and dangerousness to the community.  I think we'd all
12   agree that Ms. Chung, who is 21 years old and an honor student
13   at Columbia, has lived here since she was seven, is not a risk
14   of flight.  I don't think there is any evidence that I've been
15   able to read in the record that she would be a danger to the
16   community.
17             So, what is the issue with permitting her to stay in
18   the community and not be subjected to detention at an ICE
19   facility while the parties engage in rational, orderly briefing
20   of the issues?
21             MR. OESTERICHER:  Thank you, your Honor.
22             We are all in favor of rational briefing.  I think the
23   government's position is that, by statute, the INA precludes
24   the kind of relief that is being requested in the TRO, and
25   there are provisions in the INA for potential bail hearings
```

1   through that process, not through the Court process that's
2   being invoked here.
3           THE COURT:  All right.  Well --
4           MR. OESTERICHER:  Your Honor, my colleague, who is
5   more well versed in this, is saying he's not certain there is a
6   bond hearing available if she was detained, so I apologize.
7           THE COURT:  All right.  I was only using the analogy
8   to suggest that even in a much more immediately serious
9   context, that we have a concept of bail, and neither of those
10  considerations seem to apply here, just by analogy.
11          I've read through the papers.  I also obtained the
12  affidavit in support of the search warrant from the court file.
13  Nowhere in these papers did I see any indication of specific
14  factual support for certainly any concept of dangerousness or
15  risk of flight, nor was it particularly clear why Ms. Chung
16  would pose potentially serious adverse foreign policy
17  consequences.  I understand the Secretary of State signed a
18  piece of paper which said that, but I've not been able to find,
19  in what I've read, any specific activity by Ms. Chung that
20  seems to fit within that category.
21          MR. OESTERICHER:  I think at this point, your Honor,
22  the record is not specific about that, and we would welcome the
23  opportunity, if we have --
24          THE COURT:  Which is exactly why there ought to be a
25  TRO in place, so that the government can actually put in its

1  view of what the facts are, so that the Court, in the
2  traditional adversary process, can consider both sides and make
3  some at least preliminary decision about who has the better of
4  the arguments.  But, in the absence of receiving briefing
5  supporting the notion that the Court doesn't have power to
6  issue this Temporary Restraining Order, which, as we both
7  agree, is simply a status quo order, and that, as I indicated,
8  none of the traditional bail considerations seem to apply here
9  in a negative way, I think the most sensible thing to do is to
10 enter it -- I would have hoped with the government's consent,
11 because it's rational to do so -- and to permit us then to have
12 an orderly briefing on the substantive issues.
13          As everyone's well aware, the district court doesn't
14 normally do immigration cases, so it's not in my strong
15 wheelhouse.  So, I do want to learn.  I want to get it right.
16 But the notion of putting this 21-year-old, who there's nothing
17 in the record that's indicated in any way that she is a danger,
18 there's no indication of any weapons, no indication of any
19 communication with a foreign terrorist organization, should be
20 subjected to being in ICE detention, potentially, as the
21 government suggests, without even the opportunity for bail, is
22 not a particularly appealing result.
23          MR. OESTERICHER:  I take all of your Honor's points.
24 I am constrained that I cannot consent, but I take your points.
25          THE COURT:  I appreciate that.  I used to have your

1  job, as you know.
2      So, I don't know if plaintiff's counsel wants to add
3  anything at this point or --
4      MR. KASSEM:  Your Honor, we, on the legal team, and
5  Ms. Chung, are immensely grateful to the Court for its prompt
6  attention to the urgent matter.  As your Honor has pointed out,
7  Ms. Chung is a 21-year-old college junior at Columbia.  She has
8  a 3.9 GPA.  She was valedictorian in high school.  And as soon
9  as this happened, the first thing she did was run to seek the
10 Court's protection.
11     And of course the Court has the jurisdiction to decide
12 its own jurisdiction.  It's exactly as your Honor put it.  What
13 we are seeking at this point is a status quo TRO, no more, no
14 less, just to preserve this Court's jurisdiction, preserve the
15 status quo as it existed while we litigate any jurisdictional
16 bars.  Of course, your Honor, our position is there are no
17 jurisdictional bars that would be fatal to the claims we've
18 presented, but we would want the government to have an
19 opportunity to present their position, and for us to respond to
20 that.
21     The important thing I want to highlight, your Honor,
22 is the respondents, the government, have conceded today on the
23 record that she would not have access to a bond proceeding if
24 she were detained and placed in removal, which makes the relief
25 that we are seeking here to preserve the status quo all the

1  more urgent, your Honor.
2          So, the last thing I'll say, your Honor mentioned the
3  search warrants and the underlying papers.  As far as we can
4  tell, the search warrant cites a statute, the Federal Harboring
5  Statute, that, by its very terms, could not apply to Ms. Chung.
6  The government has claimed that this was -- the warrant was
7  issued as part of an investigation into Columbia University, so
8  not targeting Ms. Chung, targeting Columbia University under
9  the Harboring Statute.
10         But the thing I want to highlight for the Court is
11 Ms. Chung is a permanent resident.  No matter what Secretary
12 Rubio says, she remains a permanent resident until the
13 Immigration Court decides otherwise, and as long as she's a
14 permanent resident, she cannot be harbored.  The statute does
15 not apply to her.  She does not accrue unlawful presence.  So,
16 I just wanted to bring that to the Court's attention, because
17 it's baffled me a little bit about the warrant, how it was
18 issued in this case.
19         But, your Honor, I will return to our main point:
20 This is a status quo TRO that we are seeking, and it would
21 protect Ms. Chung's interests.  She continues -- she's keeping
22 up with her course work.  She wants to complete her semester.
23 And so, while we litigate this, what the Court is proposing is
24 sensible, reasonable, and it's the right thing to do here.
25         I'm prepared to answer any questions that your Honor

1  might have at this stage.
2          THE COURT:  I'm actually not sure what you're talking
3  about in terms of Columbia and harboring.  I didn't see that in
4  what I found, but maybe there's another warrant that I don't
5  know about.
6          MR. KASSEM:  No.  Let me point it to you, your Honor.
7  I should have done that at the start.  It's Exhibit K.
8          THE COURT:  All right.  That's the one I was looking
9  at.  Then I missed --
10         MR. KASSEM:  It cites 8, U.S.C., 1324.
11         THE COURT:  You're right.  I see it now.  Thank you.
12         MR. KASSEM:  Thank you, your Honor.
13         THE COURT:  Mr. Oestericher, I think it's clear that
14  I'm prepared to sign the temporary restraining order.  Is there
15  anything in the language of it that you think should be
16  improved?
17         It's not my language.  It's the plaintiff's language.
18  If there's something that's unclear --
19         MR. OESTERICHER:  Your Honor, I would ask, with the
20  Court's indulgence, either to have a couple minutes to consult
21  with my colleague, if that's okay --
22         THE COURT:  Sure.  I don't want to do something that I
23  don't appreciate the impact of what I'm about to sign --
24         MR. OESTERICHER:  Absolutely.  Understood.  I
25  appreciate the Court's indulgence.

```
 1              THE COURT:  Okay.  One thing I can see now, looking at
 2   it, is there's -- I'm not granting a preliminary injunction.
 3   I'm granting a TRO.  So, the motion -- "and/or preliminary
 4   injunction," we could cross out "and/or preliminary
 5   injunction."  Okay?
 6              MR. OESTERICHER:  Yes, your Honor.
 7              I think there are two documents, and I'm not sure
 8   whether it's document 6 or 6-1.
 9              THE COURT:  I'm looking at 6-1.
10              MR. OESTERICHER:  Okay.
11              THE COURT:  I thought, with respect to 6, we might
12   have a conversation about a briefing schedule that would work
13   for everybody once the TRO is in place.
14              MR. OESTERICHER:  Your Honor, if I may?
15              THE COURT:  Yes.
16              MR. OESTERICHER:  We do have some issues with the
17   order.
18              THE COURT:  Okay.
19              MR. OESTERICHER:  With regard to paragraph one, the
20   government's preference would be simply to say that
21   "petitioner's motion for TRO is granted."  The material that
22   follows the "because" clause --
23              THE COURT:  Right.
24              MR. OESTERICHER:  -- I'm not sure the Court has made a
25   determination she's substantially likely to prevail.  Also,
```

```
 1   with respect to irreparable harm, we think it's simpler and
 2   cleaner that, given the exigencies, the Court is entering the
 3   TRO but has not made all those findings.
 4              With regard to the remainder, I think --
 5              THE COURT:  Well, that's fine with me, so long as the
 6   government will never argue that my failure to make those
 7   additional findings in some way vitiates the power of this
 8   Temporary Restraining Order, leaving aside your jurisdictional
 9   argument.  In other words, I don't want to take that language
10   out only to have you come back and say, no, Judge, you couldn't
11   have issued that, because you didn't make those findings.
12              MR. OESTERICHER:  Right.  Understood, your Honor.
13              The government will not make arguments based on
14   removing that language.
15              THE COURT:  Mr. Kassem, okay with you, on that basis?
16              MR. KASSEM:  Yes, your Honor, as to paragraph one.
17              THE COURT:  I'm striking out the words after
18   "granted," and I already took out "and/or preliminary
19   injunction."  But you will not leave here without a written
20   copy of this.  Okay?
21              MR. OESTERICHER:  I appreciate that.  We have one
22   other suggestion.
23              THE COURT:  Sure.  Sure.
24              MR. OESTERICHER:  I, frankly, don't understand
25   paragraph three.
```

1               THE COURT:  Okay.  Just a minute.
2               MR. OESTERICHER:  Because we're enjoined from
3    detaining the plaintiff, I don't know how we're transferring
4    the plaintiff --
5               THE COURT:  Well, but it's harmless, then.
6               MR. OESTERICHER:  It is harmless, but we view it as --
7               THE COURT:  I think we'll leave it, since it's
8    harmless.  I agree with you that it's probably inspired by what
9    happened in another case, which I think counsel is involved in,
10   in this court.  So, there's no trips to Louisiana here.
11              All right.  Otherwise, we're good?
12              MR. OESTERICHER:  Yes, from the government's
13   perspective, other than the schedule.
14              THE COURT:  Yes.  We're going to talk about that.
15              Well, why don't I suggest that counsel talk to each
16   other -- because I believe in a level of civility in my
17   courtroom -- and come up with something that isn't causing
18   undue stress.  I'm all in favor of that, too.
19              MR. OESTERICHER:  Thank you, your Honor.
20              MR. KASSEM:  We appreciate that, your Honor.
21              (Pause in proceeding)
22              MR. OESTERICHER:  Your Honor, if I might?
23              THE COURT:  Sure.
24              MR. OESTERICHER:  With our colleagues, we would ask
25   for two weeks, to take us to April 8.

1             THE COURT:  So, in other words, the paragraph on the
2    second page, the first ordering paragraph, you want me to put
3    in April 8?
4             MR. OESTERICHER:  Correct.
5             THE COURT:  I can do that.
6             MR. OESTERICHER:  Would that be April 8 -- do we need
7    a time?  By midnight?
8             THE COURT:  Well, this says "no later than 5:00."
9             MR. OESTERICHER:  We'll file it by 5:00.
10            THE COURT:  You know what, it's really better to get
11   the work done by then.
12            MR. OESTERICHER:  Yes.  It's totally fine.
13            I understand that the plaintiff/petitioner requests
14   two weeks.  We think that's a -- we put a light objection to
15   that, as I am constrained to do, but that is their request.
16            THE COURT:  Listen, I'm more interested in getting it
17   right, and if my memory is correct -- for some people it might
18   matter -- it's in the middle of the Passover holiday, so that
19   might be a consideration.
20            So, two weeks would be the 22nd; is that right?
21   Everybody agrees?
22            Okay.  So we don't need the last paragraph, since
23   we're all here.  Right?  I assume --
24            MR. KASSEM:  Correct, your Honor.
25            THE COURT:  Because at this point I trust the USA's

```
 1   office has --
 2           MR. OESTERICHER:  They kindly provided it, correct.
 3           THE COURT:  Right.
 4           MR. KASSEM:  Your Honor?  Sorry.  It just came to my
 5   attention that we actually have another brief due that same
 6   day.  Would it be possible to confer with opposing counsel
 7   about a different date than the 22nd?
 8           THE COURT:  Talk away --
 9           MR. KASSEM:  My apologies.
10           THE COURT:  -- but don't push it too much.  You got
11   your -- the TRO is in place.
12           (Pause in proceeding)
13           MR. OESTERICHER:  Your Honor, after some arm
14   wrestling, we would propose a schedule where the government's
15   papers would be due on the 11th, 4-11, and to accommodate the
16   defendants -- the plaintiff, they would be 4-29, both by 5:00.
17           THE COURT:  All right.  So, actually, that works sort
18   of well, because I have a trial, a non-jury trial starting on
19   the 29th, which should take me the rest of that week, so I'll
20   need a little time past that.  Time flies it seems.
21           Could we do oral argument on the 15th of May?
22           MR. KASSEM:  Your Honor, we conferred.  Would the week
23   of the 19th be suitable for oral argument, because of
24   pre-planned travel?
25           THE COURT:  It's okay with the government?
```

```
 1                MR. OESTERICHER:  No.
 2                THE COURT:  What?
 3                MR. OESTERICHER:  I'm constrained to lightly object,
 4    but --
 5                THE COURT:  Well, there were at least ten lawyers or
 6    more listed on this complaint.  Is it really just you --
 7                MR. KASSEM:  Your Honor, that's a fair point.  Many of
 8    our co-counsel are not in New York City, and I was supposed to
 9    do it.  If the week of the 19th is not suitable to the Court --
10                THE COURT:  Look, I just think that we're here on the
11    25th of March, and TROs have a limited life.  I think that the
12    government has been reasonable on the scheduling.  Just remind
13    me, since you changed the dates, what are the current briefing
14    dates that you've agreed to?  It's April what for the
15    government?
16                MR. KASSEM:  Friday, April 11, 5:00 p.m., for the
17    government.
18                THE COURT:  Right.
19                MR. KASSEM:  Tuesday, April 29, at 5:00 p.m., for our
20    papers, your Honor.
21                THE COURT:  For the government's papers --
22                MR. KASSEM:  No.  Sorry.
23                THE COURT:  Plaintiff's papers.
24                MR. KASSEM:  Yes.  Exactly.
25                THE COURT:  Okay.  What was the proposed oral argument
```

Case 1:25-cv-02412-NRB   Document 41-2   Filed 04/29/25   Page 16 of 16    15
P3PDChuH

```
 1    date?
 2              MR. KASSEM:  Instead of the week of May 12th, your
 3    Honor, the week of May 19th, any time, including on the 19th.
 4              THE COURT:  All right.  So, we'll go to the 20th at
 5    11:00 --
 6              MR. KASSEM:  Thank you, your Honor.
 7              THE COURT:  -- here.  All right.  So we're set for
 8    oral argument on the preliminary injunction on May 20, with
 9    briefing on April 11 and April 29.
10              What I just said was not intended to preclude the
11    government from making some kind of motion to dismiss or
12    equivalent thereof, to raise whatever jurisdictional issues you
13    mentioned.
14              MR. OESTERICHER:  Understood.  Thank you, your Honor.
15              THE COURT:  All right.  So let me make sure we give
16    you each copies of both the TRO and the schedule for the
17    preliminary injunction.
18              Was there anything further at this time?
19              MR. OESTERICHER:  Nothing from the government.  Thank
20    you, your Honor.
21              THE COURT:  Very good.
22              MR. KASSEM:  Thank you, your Honor.  Nothing from our
23    side.
24              THE COURT:  Thank you.
25              (Adjourned)
```