UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

YUNSEO CHUNG,

                Plaintiff-Petitioner,

- against -

DONALD J. TRUMP, *et al.*,

                Defendants-Respondents.

No. 25 Civ. 2412 (NRB)

**DEFENDANTS-RESPONDENTS' REPLY MEMORANDUM OF LAW
IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS**

JAY CLAYTON
United States Attorney for the
Southern District of New York
*Attorney for Defendants-Respondents*
86 Chambers Street, 3rd Floor
New York, New York 10007

JEFFREY OESTERICHER
BRANDON M. WATERMAN
Assistant United States Attorneys
    – Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT ...................................................................................................................................1

    A.    The Second Circuit's Recent Decisions..................................................................1

    B.    8 U.S.C. § 1252(g) Bars Judicial Review of ICE's Decision to Commence Removal Proceedings Against Petitioner................................................................2

    C.    8 U.S.C. §§ 1252(a)(5) and (b)(9) Channel All of Petitioner's Challenges to the Courts of Appeals .......................................................................................5

    D.    Petitioner Cannot Invoke Habeas Corpus ...............................................................9

    E.    Petitioner's Challenge to the Rubio Determination Is Barred by the Political Question Doctrine..................................................................................10

CONCLUSION..............................................................................................................................11

## TABLE OF AUTHORITIES

PAGE(S)

**Cases**:

*767 Third Ave. Assocs. v. Consulate General of Socialist Federal Republic of Yugoslavia*,
218 F.3d 152 (2d Cir. 2000) .................................................................................................. 11

*Ajlani v. Chertoff*,
545 F.3d 229 (2d Cir. 2008) .................................................................................................... 9

*Ali v. Barr*,
464 F. Supp. 3d 549 (S.D.N.Y. 2020) .................................................................................. 7, 9

*Baker v. Carr*,
369 U.S. 186 (1962) .............................................................................................................. 11

*Barros Anguisaca v. Decker*,
393 F. Supp. 3d 344 (S.D.N.Y. 2019) .................................................................................... 5

*Biediger v. Quinnipiac Univ.*,
691 F.3d 85 (2d Cir. 2012) ...................................................................................................... 2

*Carafas v. LaVallee*,
391 U.S. 234 (1968) .............................................................................................................. 10

*Cartagena v. Barr*,
791 F. App'x 258 (2d Cir. 2019) ............................................................................................ 8

*Delgado v. Quarantillo*,
643 F.2d 52 (2d Cir. 2011) ...................................................................................................... 7

*DHS v. Thuraissigiam*,
591 U.S. 103 (2020) .......................................................................................................... 5, 10

*Eng v. Smith*,
849 F.2d 80 (2d Cir. 1988) ...................................................................................................... 1

*Gross v. German Foundation Indus. Initiative*,
456 F.3d 363 (3d Cir. 2006) .................................................................................................. 11

*Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*,
411 U.S. 345 (1973) .............................................................................................................. 10

*INS v. St. Cyr*,
533 U.S. 289 (2001) ............................................................................................................ 5, 9

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ................................................................................................ 6

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ................................................................................................................ 6

*Luna v. Holder*,
  637 F.3d 85 (2d Cir. 2011) .................................................................................................. 4

*Mahdawi v. Trump*,
  --- F.4th ----, 2025 WL 1353665 (2d Cir. May 9, 2025) ............................................. 1, 2, 11

*Marin-Marin v. Sessions*,
  852 F.3d 192 (2d Cir. 2017) ................................................................................................ 8

*Munaf v. Geren*,
  553 U.S. 674 (2008) ............................................................................................................. 9

*Ozturk v. Hyde*,
  --- F.4th ----, 2025 WL 1318154 (2d Cir. May 7, 2025) ................................................. 1, 2

*P.L. v. ICE*,
  No. 19 Civ. 1336 (ALC), 2019 WL 2568648 (S.D.N.Y. June 21, 2019) ............................. 9

*Padavan v. United States*,
  82 F.2d 23 (2d Cir. 1996) .................................................................................................. 11

*Preiser v. Rodriguez*,
  411 U.S. 475 (1973) ........................................................................................................... 10

*Ragbir v. Homan*,
  923 F.3d 53 (2d Cir. 2019) ................................................................................................ 10

*Reno v. American-Arab Anti-Discrimination Committee*,
  525 U.S. 471 (1999) ..................................................................................................... 3, 5, 6

*Seepersad v. Sessions*,
  892 F.3d 121 (2d Cir. 2018) ................................................................................................ 8

*Sessions v. Dimaya*,
  584 U.S. 148 (2018) ............................................................................................................. 8

*Sessions v. Morales-Santana*,
  582 U.S. 47 (2017) ............................................................................................................... 8

*Tarros S.p.A. v. United States*,
  982 F. Supp. 2d 325 (S.D.N.Y. 2013) ............................................................................... 11

*Vartelas v. Holder*,
  566 U.S. 257 (2012) ............................................................................................................. 8

*Vasquez v. Garland*,
  80 F.4th 422 (2d Cir. 2023) ................................................................................................ 8

*Velázquez v. Bondi*,
  145 S. Ct. 1232 (2025) ......................................................................................................... 9

*Webster v. Doe*,
  486 U.S. 592 (1988) ............................................................................................................. 3

**Statutes**:

8 U.S.C. § 1227 ................................................................................................................. 4, 11

8 U.S.C. § 1229 ..................................................................................................................... 4

8 U.S.C. § 1252 ............................................................................................................. passim

## PRELIMINARY STATEMENT

This Court lacks jurisdiction over this action. Petitioner seeks to preemptively enjoin and prevent the government from commencing removal proceedings against her. But Congress has removed district court jurisdiction over challenges to and review of decisions and actions taken to commence removal proceedings. No district court has jurisdiction to consider such a challenge, or to issue any injunction against the commencement of removal proceedings. Yet this is precisely what Petitioner seeks in this action. Petitioner—who is at liberty—cannot avoid the jurisdictional bars by framing her challenge as one to unlawful detention. And it is no answer to say that proceedings have not yet been brought against her. That is the very object of this litigation. This case concerns the government's authority and ability to commence removal proceedings against Petitioner. On this the law is clear: district courts lack jurisdiction. Accordingly, the Court should dismiss this action.

## ARGUMENT

### A. The Second Circuit's Recent Decisions

The Second Circuit recently issued opinions in two cases, but neither is dispositive of the government's arguments in this case. *See Mahdawi v. Trump*, --- F.4th ----, 2025 WL 1353665 (2d Cir. May 9, 2025); *Ozturk v. Hyde*, --- F.4th ----, 2025 WL 1318154 (2d Cir. May 7, 2025). Those decisions are in the context of appellate motions to stay certain district court injunctions, and thus address the government's likelihood of success on the merits for an emergency stay application. *See Eng v. Smith*, 849 F.2d 80, 82 (2d Cir. 1988) ("A movant seeking to [establish likelihood of success on the merits] need not show that success is an absolute certainty. He need only make a showing that the probability of his prevailing is better than fifty percent. There may remain considerable room for doubt."). The analysis in those decisions was phrased in terms of "likely" success/failure on the arguments rather than outright holdings, thus limiting their

conclusiveness. *Biediger v. Quinnipiac Univ.*, 691 F.3d 85, 107 (2d Cir. 2012) ("A decision on a preliminary injunction is, in effect, only a prediction about the merits of the case; thus, findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding." (cleaned up)).  Separately, those cases are distinguishable.  Ozturk and Mahdawi were both detained by ICE, and the panel viewed much of § 1252 inapplicable insofar as those petitioners were challenging the lawfulness of their detention.[1]  In contrast, Petitioner is not, nor has she ever been, detained by ICE.  Her claims seek to challenge the basis for her to be placed in removal proceedings and seek to prevent the commencement of proceedings against her.  No matter how she frames them, Petitioner's claims are not challenges to present detention.  Thus, the decisions in *Ozturk* and *Mahdawi* do not control here.

### B. 8 U.S.C. § 1252(g) Bars Judicial Review of ICE's Decision to Commence Removal Proceedings Against Petitioner

As set forth in the government's opening brief, regardless of framing, 8 U.S.C. § 1252(g) bars Petitioner's challenges to the government's decisions to charge her with removability and detain her, which arise "from the decision [and] action" to "commence proceedings."  *See* Gov't Br. 6-11.

By its plain terms, § 1252(g) eliminates district court jurisdiction over claims attacking decisions or actions to commence removal proceedings.  Congress spoke clearly, emphatically, and repeatedly, providing that "no court" has jurisdiction over "any cause or claim" arising from the commencement of removal proceedings, "notwithstanding any other provision of law," whether "statutory or nonstatutory," including habeas, mandamus, or the All Writs Act.  8 U.S.C.

---

[1] Indeed, the panel expressly declined to determine whether every claim or request for relief survived the reach of § 1252; the panel was content that so long as some aspect of the petitioners' challenges to detention fell outside the jurisdictional bar, habeas relief was available.  *See Mahdawi*, 2025 WL 1353665, at *5 n.3; *Ozturk*, 2025 WL 1318154, at *9 n.6.

2

§ 1252(g). As the Supreme Court explained in *Reno v. American-Arab Anti-Discrimination Committee* ("*AADC*"), § 1252(g) was "designed to give some measure of protection" to immigration authorities' discretionary decisions regarding the commencement of removal proceedings: Congress provided that if those decisions "are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." 525 U.S. 471, 485 (1999). Indeed, the "theme" of IIRIRA as a whole was to "protect[] the Executive's discretion from the courts," and consistent with that, § 1252(g) in particular was "directed at the deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 486–87. In short, § 1252(g) was designed, and has been interpreted by the Supreme Court, to preclude precisely the type of lawsuit now before this Court.

Congress could hardly have made that intent clearer. *See Webster v. Doe*, 486 U.S. 592, 603 (1988) ("where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear"). Indeed, it has done so repeatedly, first enacting § 1252(g) to provide that "notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim," IIRIRA, Pub. L. No. 104-208, § 306, 110 Stat. 3009—the version considered in *AADC*—then amending it in 2005 to make that intent even clearer by adding the phrase "statutory or non-statutory" after "any other provision of law" and specifically barring actions under the habeas, mandamus, and All Writs statutes, Real ID Act, Pub. L. No. 109-13, § 106, 119 Stat. 231. Congress intended to channel constitutional claims into the petition-for-review process—and, concomitantly through § 1252(g), to prohibit them in other actions. The word "constitutional" appears in 8 U.S.C. § 1252(b)(9), which, as discussed below, is a key provision channeling claims to petitions for review, and applies to Petitioner's claims here. *See* 8 U.S.C. § 1252(b)(9). The word also appears in § 1252(a)(2)(D), which specifically allows "review of

3

constitutional claims or questions of law," but only when "raised upon a petition for review." *See Luna v. Holder*, 637 F.3d 85, 94 (2d Cir. 2011).

Petitioner argues that she is not challenging the commencement of removal proceedings, but rather detention, and so § 1252(g) does not apply. Opp. 3-6. But this is unpersuasive. Petitioner is not detained, and the primary effect of success on her claims would be to prevent the government from commencing removal proceedings against her.[2] Nor is her focus on her claims challenging an alleged policy and the Rubio determination persuasive. She argues that such actions are independent of an action or decision to commence removal proceedings, but these challenges are directed at actions that undergird the Executive's decision and ability to commence removal proceedings. And as to her claims challenging DHS action, she argues that those are merely ancillary actions "akin to opening an investigation in contemplation of removal proceedings." Opp. 6. Not so. Petitioner cannot avoid the reach of § 1252(g) by mere characterization of her claims—they go to the heart of the decision to commence removal proceedings against her, and thus are barred. For similar reasons, Petitioner's assertions that she challenges only the government's "legal authority" to commence removal proceedings, not any "discretionary decision," Opp. 6-8, is also unpersuasive. But even if some of her claims are somehow not barred by § 1252(g), such claims would still fall within the scope of § 1252(b)(9).

---

[2] For example, by vacating the Rubio Determination, Petitioner would no longer be removable, as her removability is premised on the Secretary of State's determination that her presence or activities are harmful to U.S. foreign policy. *See* 8 U.S.C. § 1227(a)(4)(C)(i). Similarly, a ruling that the "Foreign Policy Ground"—8 U.S.C. § 1227(a)(4)(C)(i)—is unconstitutional would also withdraw the legal grounds for her removability. Additionally, enjoining DHS from "taking any enforcement action against" Petitioner related to the Foreign Policy Ground would prevent DHS from commencing removal proceedings against her, thus preventing her removal. Relatedly, a declaration that it would be unlawful for DHS to arrest and detain Petitioner in the future—even for purposes of serving a notice to appear (the charging document)—would necessarily prevent DHS from commencing removal proceedings against her. *See* 8 U.S.C. § 1229(a)(1) (requiring service of the notice to appear on the alien in order to initiate removal proceedings).

Petitioner also argues that § 1252(g) does not apply to her claims because doing so would raise significant constitutional concerns. Opp. 8-11. But the Supreme Court rejected this argument in *AADC* where the government had admitted that alleged First Amendment activity was the basis for selecting the individuals for removal. *AADC*, 525 U.S. at 487-88. Nor do the circumstances here fall within a potential exception for "outrageous" conduct. Opp. 8-10. Lastly, contrary to Petitioner's assertion, Opp. 10, the Suspension Clause is inapplicable. The Suspension Clause protects core applications of the writ of habeas corpus but cannot salvage non-cognizable habeas claims. *See INS v. St. Cyr*, 533 U.S. 289, 301 (2001); *accord DHS v. Thuraissigiam*, 591 U.S. 103, 112, 117–20 (2020) (finding that a statute that eliminated jurisdiction over habeas petition did not violate the Suspension Clause because the petitioner sought relief that fell outside the historical scope of the writ of habeas corpus). Moreover, the Suspension Clause is not triggered here given the availability of review through the immigration court and then to a court of appeals. *See, e.g.*, *Barros Anguisaca v. Decker*, 393 F. Supp. 3d 344, 352 (S.D.N.Y. 2019) (rejecting petitioner's Suspension Clause arguments where "even if the process leading to Barros's removal were fatally deficient, he has not shown, on the facts here, that the administrative remedies available to him, including, ultimately, a petition for review before the Second Circuit, are an inadequate or ineffective substitute for habeas review").

  **C. 8 U.S.C. §§ 1252(a)(5) and (b)(9) Channel All of Petitioner's Challenges to the Courts of Appeals**

As set forth in the government's opening brief, 8 U.S.C. §§ 1252(a)(5) and (b)(9) divest this Court of jurisdiction over Petitioner's claims, which are all, at bottom, challenges to removal proceedings. These provisions strip district courts of jurisdiction to review actions taken or proceedings brought to remove aliens from the United States, and channel such challenges to the courts of appeals. *See* Gov't Br. 11-15.

5

Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from removal proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 482–83; *see also J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) ("Taken together, [8 U.S.C.] § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition for review] process."). Petitioner's claims do not require this Court to precisely delineate the outer limits of § 1252(b)(9)'s broad reach—a task the Supreme Court declined to undertake in *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018) (plurality opinion). Instead, Petitioner's claims are squarely covered by the plain text of § 1252(b)(9) because they challenge an "action taken . . . to remove an alien from the United States." 8 U.S.C. § 1252(b)(9).

Petitioner argues that *Jennings* viewed § 1252(b)(9) to be narrow in scope, and so § 1252(b)(9) would not apply here. Opp. 13. Not so. To the contrary, *Jennings* suggests that the Supreme Court would apply § 1252(b)(9) to Petitioner's claims. *See Jennings*, 583 U.S. at 292-95 (plurality opinion); *id.* at 316-26 (opinion of Thomas, J.). In *Jennings*, the plurality of three justices concluded that § 1252(b)(9) did not bar aliens' claims challenging their immigration detention without bond hearings. *See id.* at 292. In explaining that result, the plurality expressly contrasted the aliens' detention claims with a challenge to a "decision to . . . seek removal." *Id.* at 294. That is precisely the sort of challenge now before this Court. Two other justices would have held that § 1252(b)(9) applies more broadly, barring any "aliens' claims related to their removal"—including challenges to detention—unless raised in accordance with a petition for review, a rule that would clearly preclude Petitioner's challenge here. *Id.* at 314-18 (opinion of Thomas, J.). Accordingly, a majority of the Supreme Court would hold that § 1252(b)(9)

eliminates district court jurisdiction to hear claims like Petitioner's that challenge her removal, including her challenges relating to the commencement of proceedings.

Petitioner also argues that her claims are "more akin to a collateral challenge to a criminal conviction" and that she raises "ancillary" issues that "fall outside the scope of the channeling provision." Opp. 14. She is incorrect. First, Petitioner's claims are plainly challenges that arise from her removal, attacking actions and decisions made in connection with the commencement of proceedings against her. Indeed, the primary effect of success on her claims would be to prevent the government from pursuing her removal.[3] Second, this Court cannot ignore the clear text of the statute, which unambiguously eliminates jurisdiction "to review . . . questions of law or fact" "arising from any action taken . . . to remove an alien from the United States[,]" "except as otherwise provided in [§ 1252]." 8 U.S.C. § 1252(b)(9). *See, e.g.*, *Ali v. Barr*, 464 F. Supp. 3d 549, 557-58 (S.D.N.Y. 2020) (Buchwald, J.) (§ 1252(b)(9) divested jurisdiction over issues arising from removal proceedings).

Next, Petitioner argues that § 1252(b)(9) channels only those issues adjudicated by the immigration court that affect the validity of the removal order, Opp. 13-15, asserting that "if the IJ or BIA cannot pass on a claim . . . it does not merge into a final order of removal and is not covered by these channeling provisions," Opp. 13-14. Relatedly, she argues that if § 1252(b)(9) channels her claims, they will never receive review in any court, because her constitutional claims allegedly cannot be heard in a PFR before the court of appeals because the immigration court and BIA lack power to hear constitutional claims. Opp. 18-20. These arguments are without merit.

---

[3] Whether the "district court has jurisdiction turns on the substance of the relief that a plaintiff is seeking." *Delgado v. Quarantillo*, 643 F.2d 52, 55 (2d Cir. 2011) (discussing 8 U.S.C. § 1252(a)(5)). Here, Petitioner's challenges to her "detention," the Foreign Policy Ground, and the Rubio determination are all efforts to bar the government from commencing removal proceedings against her.

For one, the clear statutory language of § 1252(b)(9) cannot be ignored: "judicial review of *all* questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from *any* action or proceeding brought to remove an alien . . . shall be available *only* in judicial review of a final [removal] order under this section." Further: "no court shall have jurisdiction . . . to review such an order *or such questions of law or fact*." That language squarely forecloses Petitioner's challenges here.

And contrary to Petitioner's unsupported assertion, courts through the petition-for-review process routinely review and consider constitutional claims that could not be resolved by an immigration judge. *See, e.g.*, *Sessions v. Dimaya*, 584 U.S. 148 (2018) (holding the residual clause of the INA was unconstitutionally vague); *Sessions v. Morales-Santana*, 582 U.S. 47 (2017) (holding that a gender-based distinction in citizenship law violated the Fifth Amendment's Equal Protection Clause); *Vartelas v. Holder*, 566 U.S. 257 (2012) (holding that enforcement of a provision of IIRIRA retroactively to LPR who had been convicted of crime before the Act's enactment was unconstitutional); *Vasquez v. Garland*, 80 F.4th 422 (2d Cir. 2023) (considering alien's due process challenge to removal statute); *Cartagena v. Barr*, 791 F. App'x 258, 259-60 (2d Cir. 2019) (considering alien's constitutional challenge to derivative citizenship statute); *Seepersad v. Sessions*, 892 F.3d 121 (2d Cir. 2018) (considering alien's equal protection challenge to removability); *Marin-Marin v. Sessions*, 852 F.3d 192 (2d Cir. 2017) (considering alien's Fifth and Eighth Amendment challenges to removability). In short, Petitioner's assertion that constitutional issues cannot be raised through a PFR is simply wrong.

Lastly, the fact that Petitioner does not currently have a final removal order does not render § 1252(b)(9) inapplicable. Section 1252 requires an alien to exhaust all issues first in immigration court and at the BIA, and then once subject to a final removal order, he or she may seek judicial

8

review of any legal, constitutional, or factual question in the court of appeals through a petition for review. *See* 8 U.S.C. §§ 1252(a)(5), (b)(9); *see also Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008); *Ali*, 464 F. Supp. 3d at 557-58 (applying § 1252(b)(9) where aliens were in ongoing removal proceedings); *P.L. v. ICE*, No. 19 Civ. 1336 (ALC), 2019 WL 2568648, at *2 (S.D.N.Y. June 21, 2019) (same); *accord Velázquez v. Bondi*, 145 S. Ct. 1232, 1241 (2025). ("Section 1252 permits individuals to petition for judicial review of 'final orders of removal' and indicates that those petitions supply the *exclusive* means for securing '[j]udicial review of all questions of law.'" (emphasis added)). That is the process that Congress has devised, and Petitioner cannot circumvent it. Allowing such claims to proceed in district court would welcome the precise front-end district court litigation that the provisions in § 1252 were designed to stop.

    **D.**    **Petitioner Cannot Invoke Habeas Corpus**

Contrary to Petitioner's assertions, habeas corpus is unavailable here. Gov't Br. 16. "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of executive detention, and it is in that context that its protections have been strongest." *St. Cyr*, 533 U.S. at 301; *see Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release."). But Petitioner is not—and never has been—detained. She argues that her claims challenge the legality of detention, but this is inaccurate, as the true character of her claims is to challenge the Executive's actions to remove her. Nor does she seek release from custody. To the contrary, rather than anything that could be described as "release," Petitioner asks the Court to maintain her in precisely the same position she is in now: at liberty in the United States and not subject to removal proceedings. *See Munaf*, 553 U.S. at 693–94 ("the nature of the relief sought by the habeas petitioners suggests that habeas is not appropriate in these cases," where "what petitioners are really after is a court order requiring the United States to shelter them" from prosecution by foreign

9

government).  Essentially, Petitioner seeks judicial oversight of the enforcement of the immigration laws.  This attempted use of the writ of habeas corpus fails.  It fails also because Petitioner is not in custody.  *See Carafas v. LaVallee*, 391 U.S. 234, 238 (1968) ("[Custody] is required not only by the repeated references in the [habeas] statute, but also by the history of the great writ.").

Petitioner argues that she is "in custody" for purposes of invoking habeas, Opp. 20-23, but she finds no support in the cases she cites.  The petitioners in *Hensley v. Mun. Ct., San Jose Milpitas Jud. Dist.*, 411 U.S. 345 (1973), and *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019), *cert. granted, judgment vacated sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020), were both previously detained and released subject to re-detention.  In contrast, Petitioner has never been detained, and thus she is not subject to any conditions or release order that may require her re-detention.  Similarly inapposite is *Preiser v. Rodriguez*, 411 U.S. 475, 487 (1973), as that case concerned challenges brought by inmates who "alleged the deprivation of their good-time credits was causing or would cause them to be in illegal physical confinement."  In short, Petitioner is not in custody, and she cannot invoke habeas to pre-emptively attack her removal proceedings.  *See Thuraissigiam*, 591 U.S. at 119 (no habeas remedy where petitioner "does not want 'simple release' but, ultimately, the opportunity to remain lawfully in the United States").

### E. Petitioner's Challenge to the Rubio Determination Is Barred by the Political Question Doctrine

Petitioner unsuccessfully argues against the applicability of the political question doctrine by broadly addressing its applicability to her entire case.  Opp. 23-26.  But she attacks a strawman.  As set forth in the government's opening brief, Petitioner's challenge to and request for the Court to vacate *the Secretary of State's foreign policy determination* invokes an unreviewable political question.  Gov't Br. 16-18.  The government did not argue that it barred all claims.

The gravamen of any political question is "essentially a function of the separation of powers." *Baker v. Carr*, 369 U.S. 186, 217 (1962). Petitioner's challenge to the Secretary's determination, including the Executive's foreign policy considerations, implicates all six "formulations" set forth by the Supreme Court. *Id.* Petitioner's claim and requested injunction sits at the intersection of two issues textually committed to the political branches of the government: (1) foreign affairs, and (2) immigration policy. Further, there is no manageable standard for what constitutes "potentially serious adverse foreign policy consequences," 8 U.S.C. § 1227(a)(4)(C)(i), or a "compelling United States foreign policy interest," 8 U.S.C. § 1227(a)(4)(C)(ii). *See, e.g.*, *Padavan v. United States*, 82 F.2d 23, 27 (2d Cir. 1996) (no manageable judicial standards for evaluating immigration policy). Petitioner is asking this Court to "displac[e] the Executive in its foreign policy making role," *Gross v. German Foundation Indus. Initiative*, 456 F.3d 363, 389-90 (3d Cir. 2006), and to find that the Secretary of State "acted unreasonably under the circumstances," *Tarros S.p.A. v. United States*, 982 F. Supp. 2d 325, 333 (S.D.N.Y. 2013). But second-guessing of this type of exercise of discretion is what the political question doctrine is meant to prevent. *See, e.g.*, *Baker*, 369 U.S. at 217; *767 Third Ave. Assocs. v. Consulate General of Socialist Federal Republic of Yugoslavia*, 218 F.3d 152, 160 (2d Cir. 2000).

## **CONCLUSION**

For the foregoing reasons, as well as those contained in the government's opening brief, the Court should dismiss this action in its entirety.[4]

---

[4] While the government believes that the action should be dismissed in its entirety, if the Court determines otherwise, it should nonetheless dismiss all claims and requests for relief that are jurisdictionally barred or fail to state a claim upon which relief can be granted. *See, e.g.*, *Mahdawi*, 2025 WL 1353665, at *5 n.3 (leaving it to district court to determine which claims and requests for relief survive motion to dismiss).

Dated: May 14, 2025
      New York, New York

                                                 Respectfully submitted,

                                                 JAY CLAYTON
                                                 United States Attorney for the
                                                 Southern District of New York
                                                 Attorney for Defendants-Respondents

                              By:    /s/ *Brandon M. Waterman*
                                                 JEFFREY OESTERICHER
                                                 BRANDON M. WATERMAN
                                                 Assistant United States Attorneys
                                                 86 Chambers Street, 3rd Floor
                                                 New York, New York 10007
                                                 Tel.: (212) 637-2695/2743
                                                 jeffrey.oestericher@usdoj.gov
                                                 brandon.waterman@usdoj.gov

## Certificate of Compliance

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this memorandum complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,727 words.