## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

Yunseo CHUNG,

       *Plaintiff-Petitioner*,

v.

Donald J. TRUMP, in his official capacity as
President of the United States of America; Marco
RUBIO, in his official capacity as Secretary of
State, U.S. Department of State; Pamela BONDI,
in her official capacity as Attorney General, U.S.
Department of Justice; Kristi NOEM, in her
official capacity as Secretary of Homeland
Security, U.S. Department of Homeland Security;
Todd M. LYONS, in his official capacity as
Acting Director, U.S. Immigration and Customs
Enforcement; and William P. JOYCE, in his
official capacity as Acting Field Office Director of
the New York Immigration and Customs
Enforcement Office,

       *Defendants-Respondents*.

Case No. 25-cv-2412

## SUR-REPLY IN FURTHER OPPOSITION TO
## DEFENDANTS-RESPONDENTS' MOTION TO DISMISS

CLEAR Project - Main Street Legal Services, Inc.
Emery Celli Brinckerhoff Abady Ward & Maazel LLP
Human Rights First
Lawyers' Committee for Civil Rights of the San Francisco Bay Area
Law Office of Matthew Bray
Jonathan Hafetz, Esq.

TABLE OF CONTENTS

PAGE NO.

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT .............................................................................................................2

    I.      SECTION 1252(G) DOES NOT BAR REVIEW OF MS. CHUNG'S CLAIMS...2

          A.    Section 1252(g) Does Not Bar Review of Ms. Chung's Challenge to Imminent Unconstitutional Detention .......................................2

          B.    Section 1252(g) Does Not Bar Review of Ms. Chung's Challenge to the Rubio Determination...........................................................3

          C.    Section 1252(g) Does Not Bar Review of Ms. Chung's Challenge to the Policy of Targeting Expression in Support of Palestinian Human Rights ...................................................................................4

    II.     SECTIONS 1252(A)(5) AND (B)(9) DO NOT CHANNEL MS. CHUNG'S CLAIMS TO THE COURT OF APPEALS................................5

          A.    Section 1252(a)(5) and (b)(9) Do Not Channel Ms. Chung's Challenge to Imminent Unconstitutional Detention into the Petition for Review Process .......................................................6

          B.    Section 1252(a)(5) and (b)(9) Do Not Channel Ms. Chung's Challenge to the Rubio Determination into the Petition for Review Process ........................................................................7

          C.    Section 1252(a)(5) and (b)(9) Do Not Channel Ms. Chung's Challenge to the Policy of Ideological Targeting into the Petition for Review Process .......................................................10

CONCLUSION.........................................................................................................11

TABLE OF AUTHORITIES

**Cases**

*Ajlani v. Chertoff,*
        545 F.3d 229 (2d Cir. 2008)................................................................. 3

*Ali v. Barr,*
        464 F. Supp. 3d 549 (S.D.N.Y. 2020)............................................... 10

*Ali v. Mukasey,*
        524 F.3d 145 (2d Cir. 2008)................................................................ 4

*Am. Ass'n of Univ. Professors v. Rubio,*
        No. 25-cv-10685, 2025 WL 1235084 (D. Mass. Apr. 29, 2025)...................... 10

*Bhaktibai-Patel v. Garland,*
        32 F.4th 180 (2d Cir. 2022) ............................................................... 7

*Biediger v. Quinnipiac University,*
        691 F.3d 85 (2d Cir. 2012).................................................................. 1

*Colvin v. Keen,*
        900 F.3d 63 (2d Cir. 2018).................................................................. 1

*Department of Homeland Security v. Regents,*
        591 U.S. 1 (2020)........................................................................ 4, 10

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.,*
        950 F.3d 177 (3d Cir. 2020)............................................................. 6, 9

*Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency,*
        126 F.3d 461 (3d Cir. 1997)................................................................ 1

*Jafarzadeh v. Nielsen,*
        321 F. Supp. 3d 19 (D.D.C. 2018)........................................................ 5

*Khalil v. Joyce,*
        No. 25-cv-01963, 2025 WL 1232369 (D.N.J. Apr. 29, 2025)................ 3, 4, 8, 9

*Mahdawi v. Trump,*
        ---F.4th----, 2025 WL 1353665 (2d Cir. May 9, 2025).......................... passim

*Massieu v. Reno,*
        91 F. 3d 416 (3d Cir. 1996)................................................................ 9

*Nasrallah v. Barr,*
        590 U.S. 573 (2020)......................................................................... 7

*NWDC Resistance v. ICE*,
    493 F. Supp. 3d 1003 (W.D. Wash. 2020).................................................................. 4, 10

*Ozturk v. Hyde*,
    ---F.4th----, 2025 WL 1318154 (2d Cir. May 7, 2025)............................................ passim

*Ragbir v. Homan*,
    923 F.3d 53 (2d Cir. 2019)............................................................................................. 5

*Ragbir v. United States*,
    No. 17-cv-1256, 2018 WL 1446407 (D.N.J. Mar. 23, 2018) ......................................... 4

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999).......................................................................................... 2, 3, 5, 9

*Ruiz v. Mukasey*,
    552 F.3d 269 (2d Cir. 2009)........................................................................................... 7

*In re Ruiz-Massieu*,
    22 I & N. Dec. 833 (BIA 1999) ..................................................................................... 8

**Statutes and Regulations**

8 U.S.C. § 1227(a)(4)(C) ....................................................................................................... 3, 8

8 U.S.C. § 1229 ..................................................................................................................... 3, 8

8 U.S.C. § 1252 ................................................................................................................. passim

8 C.F.R. § 1003.35 .................................................................................................................... 8

8 C.F.R. § 1239.1 ...................................................................................................................... 3

**Other Authorities**

Angie Orellana Hernandez, *College newspapers under pressure as immigration fears silence
    sources*, Wash. Post (May 17, 2025),
      https://www.washingtonpost.com/education/2025/05/17/college-newspapers-trump-
      international-students ................................................................................................... 9

## PRELIMINARY STATEMENT

Plaintiff-Petitioner Yunseo Chung submits this sur-reply to address intervening Second Circuit decisions rejecting Defendants-Respondents' ("Defendants") positions in this case. *See Mahdawi v. Trump*, ---F.4th----, 2025 WL 1353665 (2d Cir. May 9, 2025); *Ozturk v. Hyde*, ---F.4th----, 2025 WL 1318154 (2d Cir. May 7, 2025).[1] These decisions embrace and affirm the points and authorities Ms. Chung marshaled in her opposition to Defendants' motion to dismiss. They leave no doubt that this Court may hear her challenges to imminent unconstitutional detention, Defendants' policy of targeting noncitizens for exercising First Amendment rights in support of Palestinian human rights, and that policy's application to Ms. Chung's on-campus expression.

Defendants attempt to sidestep these controlling decisions by noting meekly that they were issued in the context of rejecting the government's stay requests and held only that the government was unlikely to succeed (not destined to fail) on its jurisdictional arguments. ECF 52 (Reply) at 1. Of course, that does nothing to change the reality of those twin rulings or the force of their reasoning.[2] Defendants also claim that, because Ms. Chung is not detained, 8 U.S.C. § 1252 bars her challenge. Reply at 2. But *Ozturk* and *Mahdawi* do not rest on the fact that the petitioners had been detained; rather, the Second Circuit rejected wholesale the government's portrayal of

---

[1] In this sur-reply, Ms. Chung refrains from addressing Defendants' unavailing arguments in reply regarding habeas jurisdiction and the purported applicability of the political question doctrine to the Rubio determination. ECF 52 (Reply) at 9-11. She respectfully refers the Court to Part II of her opposition. ECF 40 (MTD Opp.) at 20-26.

[2] Defendants misread *Biediger v. Quinnipiac University*, 691 F.3d 85 (2d Cir. 2012), which involved the unremarkable circumstance where a district court initially granted a preliminary injunction, then ordered permanent relief on a complete record. *Biediger* confirmed that the district court was not bound by its own preliminary ruling and could "reexamin[e]" the merits at trial. *Id.* at 107. *Biediger* did not suggest that a district court is not bound by the Second Circuit's legal pronouncements—even those made in a preliminary or stay posture. *Cf. Colvin v. Keen*, 900 F.3d 63, 68 (2d Cir. 2018) (law-of-the-case considerations are "very different" when considering effect of appellate ruling on subsequent district court proceedings, as compared to the *Biediger* posture). *See also Hawksbill Sea Turtle v. Fed. Emergency Mgmt. Agency*, 126 F.3d 461, 474 n.11 (3d Cir. 1997) (preliminary injunction findings "can have preclusive effect if the circumstances make it likely that the findings are 'sufficiently firm' to persuade the court that there is no compelling reason for permitting [re-litigation]").

detention challenges as attacking removal proceedings themselves, a holding that applies with equal force to imminent detention and present detention. It is telling that, apart from these wan attempts to distinguish *Ozturk* and *Mahdawi*, Defendants do not discuss the decisions' interpretation of the statutes at issue here. But those controlling decisions vindicate Ms. Chung's arguments that the Court has jurisdiction over her claims.

## ARGUMENT

Pursuant to *Ozturk*, this Court's review of Defendants' jurisdictional arguments "is guided by longstanding principles of statutory interpretation requiring Congress to speak clearly and specifically when it wishes to deprive the federal courts of jurisdiction." 2025 WL 1318154, at *7. Properly construed, the statutes Defendants cite pose no obstacle to this Court's jurisdiction.

## I.    SECTION 1252(G) DOES NOT BAR REVIEW OF MS. CHUNG'S CLAIMS

The parties agree that 1252(g) reaches only "discretionary determinations" to undertake "three discrete actions": "*commence* proceedings, *adjudicate* cases, or *execute* removal orders." *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999) (emphasis in original). The text of the statute, as interpreted by ample precedent, including *Mahdawi* and *Ozturk*, forecloses Defendants' contention that "the primary effect" of granting relief here "would be to prevent the government from commencing removal proceedings." Reply at 4.

### A.    Section 1252(g) Does Not Bar Review of Ms. Chung's Challenge to Imminent Unconstitutional Detention

The Second Circuit emphatically rejected Defendants' attempt to conflate detention with commencement of proceedings, holding that "1252(g) does not preclude jurisdiction over the challenges to the legality of a noncitizen's detention." *Ozturk*, 2025 WL 1318154, at *8 (alterations omitted). Simply put, "detention does not arise from the government's 'commence[ment of] proceedings.'" *Id.* at *9 (quoting *AADC*'s interpretation of 1252(g)); *accord id.* (explaining that

"filing a Notice to Appear ("NTA") in an immigration court"—not detention—"is the action that commences removal proceedings" and citing 8 U.S.C. § 1229(a) and 8 C.F.R. § 1239.1).[3] The Court should reject Defendants' *ipse dixit* to the contrary and find that 1252(g) does not reach Ms. Chung's retaliatory detention claim.

### B. Section 1252(g) Does Not Bar Review of Ms. Chung's Challenge to the Rubio Determination

As in *Ozturk* and *Mahdawi*, Defendants "dramatically overstate[] the reach of § 1252(g)." *Id.* at *8. Ms. Chung's challenge to the Rubio Determination is not a challenge to a DHS decision to commence removal proceedings. *See id.* ("[T]here are 'many other decisions or actions that may be part of the deportation process' but that do not fall within the three discrete exercises of 'prosecutorial discretion' covered by § 1252(g)." (quoting *AADC*, 525 U.S. at 482)). Her claim concerns a determination by the State Department that her protected expression purportedly compromises a compelling foreign policy interest. Section 1252(g), however, does not apply to actions by the State Department at all, but only to a "decision or action by the Attorney General [or Secretary of Homeland Security]," vested with exclusive authority "to commence proceedings." *Id.* at *9.[4]

Defendants acknowledge that the Rubio Determination was made by a different federal agency. *See* ECF 34 (Vides Decl.) ¶ 6 ("ICE was notified that the Secretary of State determined Ms. Chung is a deportable alien pursuant to Section 237(a)(4)(C)."). Yet, they fail to cite any case applying 1252(g) to decisions made by executive branch officials outside of DHS (or the Attorney

---

[3] Defendants bizarrely state—defying statutory text, precedent, and experience—that there is no way to serve an NTA absent detention. The very provision Defendants cite for this proposition expressly permits NTA service by mail, Reply at 4 n.2 (citing 8 U.S.C. § 1229(a)(1)), and the overwhelming majority of the 3.9 million individuals with cases in immigration court, *Khalil v. Joyce*, No. 25-cv-01963, 2025 WL 1232369, at *37 n.50 (D.N.J. Apr. 29, 2025), are not detained.

[4] "Congress transferred authority" "to commence removal proceedings . . . from the Attorney General to the Secretary of the Department of Homeland Security." *Ajlani v. Chertoff*, 545 F.3d 229, 231 n.2 (2d Cir. 2008).

General, prior to DHS's establishment). And while Defendants state that the Rubio Determination "undergird[s]" DHS's commencement of removal proceedings and that its invalidation would have a "primary effect" of vitiating DHS's basis for commencing removal proceedings, Reply at 4, they cite no cases adopting their atextual, purposivist reinterpretation of 1252(g). Nor do they acknowledge, let alone distinguish, numerous authorities narrowly interpreting 1252(g) to exclude determinations and actions distinct from the decision to commence removal proceedings. *See Khalil*, 2025 WL 1232369, at *58 (collecting cases); *see also, e.g.*, *Ali v. Mukasey*, 524 F.3d 145, 150 (2d Cir. 2008) (reviewing denial of request to withdraw asylum application notwithstanding that adjudication of meritless asylum application directly led to decision to commence proceedings); *Ragbir v. United States*, No. 17-cv-1256, 2018 WL 1446407, at *9 (D.N.J. Mar. 23, 2018) (1252(g) does not bar challenge to legal decision that put Mr. Ragbir "within th[e] class of removable aliens" against whom proceedings may be commenced at DHS discretion). These authorities, which conform to the approach taken by the Second Circuit in *Mahdawi* and *Ozturk*, limit 1252(g) to its plain terms and require rejection of Defendants' fanciful and self-serving reading of that provision to evade review of the Rubio Determination.

### C. Section 1252(g) Does Not Bar Review of Ms. Chung's Challenge to the Policy of Targeting Expression in Support of Palestinian Human Rights

Ms. Chung's challenge to Defendants' policy of ideological targeting is further upstream of the Rubio determination and therefore even further afield of 1252(g)'s scope. The decision in *Department of Homeland Security v. Regents* (cited by *Ozturk*, 2025 WL 1318154, at *9) is instructive. There, the Supreme Court easily dispensed with the government's argument that 1252(g) barred a challenge to its policy decision to rescind DACA (*i.e.*, protection against deportation) in order to begin removal proceedings against DACA recipients. 591 U.S. 1, 19 (2020); *see NWDC Resistance v. ICE*, 493 F. Supp. 3d 1003, 1011 (W.D. Wash. 2020) (1252(g)

4

did not bar review of "challenge [to] the constitutionality of ICE's 'policy choice' to target outspoken [noncitizens]"); *Jafarzadeh v. Nielsen*, 321 F. Supp. 3d 19, 31 (D.D.C. 2018) (same as to government program of denying immigration petitions on overbroad national security grounds). Defendants ignore this squarely applicable and dispositive precedent and point to no contrary authority.

Moreover, *Ozturk* reaffirms that 1252(g) was "directed against a particular evil: attempts to impose judicial constraints on prosecutorial discretion." 2025 WL 1318154, at *8 (internal quotations omitted). Defendants repeatedly invoke *AADC* but attempt to summarily brush aside as "unpersuasive" the distinction between the challenge to prosecutorial discretion at issue there and the challenge to the legality of a government policy here. Reply at 4. In contrast to the plaintiffs in *AADC* or *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019), *vacated on other grounds sub nom. Pham v. Ragbir*, 141 S. Ct. 227 (2020), who were otherwise removable but alleged selective pursuit of their removal based on impermissible animus, Ms. Chung is not otherwise removable but instead is at risk of being targeted under an unconstitutional policy intended to harm disfavored noncitizen speakers. Defendants do not cite a single decision applying 1252(g) to bar a policy challenge, let alone one that is upstream of any independent prosecutorial decision by DHS.[5]

## II. SECTIONS 1252(A)(5) AND (B)(9) DO NOT CHANNEL MS. CHUNG'S CLAIMS TO THE COURT OF APPEALS

Sections 1252(a)(5) and (b)(9) establish a channeling regime applicable in situations where—unlike here—a plaintiff seeks judicial review of law and facts at issue before the immigration court in the course of deciding removability. MTD Opp. at 11-15. Defendants'

---

[5] Although 1252(g) poses no obstacle to Ms. Chung's claims, even if it applied, she has alleged facts sufficient to meet the "outrageousness" exception described in *Ragbir*, 923 F.3d at 73. Defendants offer no substantive response to Ms. Chung's showing, Reply at 5. Ms. Chung respectfully submits that any adjudication of this exception, which would necessitate a fact-specific analysis, should await the completion of discovery. MTD Opp. at 8 n.6.

expansive interpretation of the "arising from" language in (b)(9) contradicts *Ozturk*'s narrow interpretation of the statute based on plentiful appellate authorities. *See* 2025 WL 1318154, at *11 & n.8 (citing, *inter alia*, *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 186 (3d Cir. 2020) ("[T]he point of the provision is to channel claims into a single petition for review, not to bar claims that do not fit within that process.")). The abundant, persuasive authority relied on by *Ozturk* and *Mahdawi* is dispositive here.

### A. Section 1252(a)(5) and (b)(9) Do Not Channel Ms. Chung's Challenge to Imminent Unconstitutional Detention into the Petition for Review Process

In the wake of *Ozturk* and *Mahdawi*, Defendants understandably make almost no effort to argue that 1252(b)(9) channels review of Ms. Chung's detention into the petition for review (PFR) process. Unless this Court has jurisdiction to hear Ms. Chung's unconstitutional detention claims, she will be immediately detained without bond, her detention claims will not be reviewed in removal proceedings, and her detention will be effectively unreviewable via PFR—all of which Defendants concede. The Second Circuit has explained that these undisputed circumstances take Ms. Chung's challenge to unconstitutional detention outside of 1252(b)(9): "To require her to sit on her challenge until she receives a final order of removal would create the situation warned of in *Jennings*: [her] detention claim would be 'effectively unreviewable' because" any such review would come too late to remedy the harm. *Ozturk*, 2025 WL 1318154, at *12.[6] The Second Circuit has thus already rejected Defendants' invocation of 1252(b)(9) as to Ms. Chung's detention claims.

---

[6] In their discussion of 1252(b)(9), Defendants reprise their unavailing argument that "Petitioner's challenge[] to her 'detention,' . . . [is an] effort[] to bar the government from commencing removal proceedings," Reply at 7 n.3, but that meritless objection relates to 1252(g). *See supra* Part I.A.

**B.    Section 1252(a)(5) and (b)(9) Do Not Channel Ms. Chung's Challenge to the Rubio Determination into the Petition for Review Process**

Section 1252(b)(9) likewise poses no obstacle to Ms. Chung's challenge to the Rubio Determination. *Ozturk*'s interpretation of the statutory text indicates that the provision simply has no application without a removal order. 2025 WL 1318154, at *13 ("[N]o order of removal is at issue here."). That rule is dispositive here given the absence of any removal order.

Independently sufficient to defeat Defendants' invocation of 1252(b)(9) as to the Rubio Determination, *Ozturk* reaffirms settled authority that district courts may hear claims if they are "separate from the removal procedures followed by the immigration courts," "even if [the] claims have a relationship to pending removal proceedings." *Id.* at *11 (quotations omitted); *see id.* at *12 ("[O]verlap, even substantial substantive overlap, does not make one claim arise out of the other."). This upholds the principle that channeling applies to "only the rulings made by the immigration judge or Board of Immigration Appeals that affect the validity of the final order of removal." *Nasrallah v. Barr*, 590 U.S. 573, 582 (2020); *see also Bhaktibai-Patel v. Garland*, 32 F.4th 180, 189 (2d Cir. 2022) (channeling "excludes a decision that relates to an alien's ultimate removal but 'does not affect the validity' of the removal order" (quoting *Nasrallah*, 590 U.S. at 574)).

*Ozturk* illustrates the proper application of this rule by favorably citing a decision holding that channeling did not apply to "an action seeking review of the denial of an I-130 petition [to classify noncitizen as U.S. citizen's immediate relative] because such a denial is unrelated to any removal action or proceeding." 2025 WL 1318154, at *12 (quoting *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009) (upholding district court jurisdiction to review I-130 denial notwithstanding that it foreclosed plaintiff's effort to obtain lawful permanent residence, leaving her removable)). *Ozturk* thus confirms that determinations made antecedent to and outside removal proceedings— such as the Rubio Determination—fall outside the channeling regime.

*Ozturk* emphasizes two additional considerations that further foreclose Defendants' invocation of 1252(b)(9), which they simply ignore: (1) The channeling regime cannot apply where, as here, no factual record will be developed in immigration court that could permit review via PFR, because the court of appeals "is obliged to decide the petition *only* on the administrative record on which the order of removal is based," *Ozturk*, 2025 WL 1318154, at *11 (emphasis in original) (quoting 8 U.S.C. § 1252(b)(4)(A)); and (2) the need to avoid the "absurd" result contemplated in *Jennings* that a constitutional harm would be unredressable if the plaintiff must endure it through the PFR process—*i.e.*, as relevant here, the need to address "free speech and due process rights [that] are being violated, ***now***." *Id.* (emphasis in original) (citing *Khalil*, 2025 WL 1232369, at *30). Applying these considerations, Ms. Chung's challenge to the Rubio Determination is not channeled into the PFR process.

**First**, an Immigration Judge (IJ) would not be able to create a sufficient factual record. While an IJ "may issue subpoenas for the attendance of witnesses and presentation of evidence," 8 U.S.C. § 1229a(b)(1), to do so, the IJ must find that such evidence is "essential" to the removal case before them, 8 C.F.R. § 1003.35(a) ("testimony or other evidence" must be "essential"), 1003.35(b) (same for subpoena to produce witness or order any "documentary evidence"). DHS could discharge its burden against Ms. Chung by simply presenting the Rubio Determination, and, under BIA precedent, the IJ would be duty-bound to treat it "as conclusive evidence of the respondent's deportability" without inquiring into any of the factual allegations Ms. Chung makes in this case. *In re Ruiz-Massieu*, 22 I & N. Dec. 833, 842, 844 (BIA 1999) (barring IJ from looking behind 237(a)(4)(C) determination by analogizing it to a "record of criminal conviction"). The immigration proceedings in *Khalil* illustrate the impossibility of building an adequate record in immigration court for PFR review. *Khalil*, 2025 WL 1232369, at *33-38.

8

That no record could be developed to enable review of Ms. Chung's claims via PFR necessarily takes her claims outside 1252(b)(9), *Ozturk*, 2025 WL 1318154, at *11 (rejecting application of 1252(b)(9) where "channeling function has no role to play"), and makes Ms. Chung's claims dispositively different from cases Defendants cite in which constitutional claims were presented at the conclusion of removal proceedings, Reply at 13. Each case Defendants cite involved the court of appeals passing on facial challenges to removal statutes that required no record development, but Ms. Chung's challenge to the Rubio Determination is a challenge to the unconstitutional application of an executive policy that is *outside* the statute.[7] Given the uncontested fact that the immigration court cannot hear (and thus cannot develop a record on) Ms. Chung's as-applied challenges, Defendants' interpretation ignores that "the point of the provision is to channel claims into a single petition for review, not to bar claims that do not fit within that process." *E.O.H.C.*, 950 F.3d at 186.

**Second**, unlike in *Massieu v. Reno*, where the relevant harm—removal—could be averted through the PFR process, 91 F. 3d 416, 424 (3d Cir. 1996), the harm to Ms. Chung's First Amendment rights is happening *now*. Moreover, the government's targeting of Ms. Chung is presently chilling the speech of noncitizen students around the country.[8] As *Ozturk* reaffirms, "meaningful review of First Amendment claims generally means *rapid, prioritized* review." 2025 WL 1318154, *12 (emphasis in original) (quoting *Khalil*, 2025 WL 1232369, at *30). This general rule acknowledges that prolonging the harm—if Ms. Chung and similarly situated noncitizens are

---

[7] Notably, the Solicitor General in *AADC* acknowledged that the record would not allow review of as-applied First Amendment challenges via PFR and proposed to resolve that problem by consenting to transfer the case from the court of appeals with jurisdiction over the PFR to a district court for factfinding. *AADC*, 525 U.S. at 496 (Ginsburg, J., concurring in part). The majority explained that this transfer procedure was statutorily impermissible. 525 U.S. at 488 n.10.

[8] *See* Angie Orellana Hernandez, *College newspapers under pressure as immigration fears silence sources*, Wash. Post (May 17, 2025), https://www.washingtonpost.com/education/2025/05/17/college-newspapers-trump-international-students.

made to suffer the chilling effect of government censorship unless and until they belatedly vindicate their rights through two levels of agency proceedings, a PFR, and any subsequent proceedings—would carry a significant compounding effect.

**C.    Section 1252(a)(5) and (b)(9) Do Not Channel Ms. Chung's Challenge to the Policy of Ideological Targeting into the Petition for Review Process**

Defendants offer no support in logic or precedent for the proposition that a challenge to an unconstitutional policy—the adoption and deployment of which necessarily precedes and stands apart from any removal proceeding—must proceed by PFR. *Ozturk* emphasizes that the scope of 1252(b)(9) is limited to issues adjudicated in removal proceedings. 2025 WL 1318154, at *11. As a decision further upstream than the Rubio Determination, the Policy pursuant to which Ms. Chung was targeted is even more distant from matters adjudicated in removal proceedings that are subject to channeling. The *Regents* decision, cited in *Ozturk*'s discussion of the channeling provisions, *id.*, is, again, instructive. As with 1252(g), the Supreme Court easily dispensed with the government's argument that 1252(b)(9) barred a challenge to its policy decision to rescind DACA as a precursor to removal proceedings against DACA recipients. 591 U.S. at 19.[9] *Regents* has subsequently been applied to find jurisdiction over a challenge to a policy of selectively targeting individuals for removal based on political speech. *NWDC*, 493 F. Supp. 3d at 1013. The same result is required here.[10]

---

[9] Notably, the government has not argued that 1252(b)(9) applies in parallel litigation by concerned entities challenging the policy at issue here. *See Am. Ass'n of Univ. Professors v. Rubio*, No. 25-cv-10685, 2025 WL 1235084, at *1 (D. Mass. Apr. 29, 2025). The untenable implication is that organizations may challenge policies affecting noncitizens, whereas noncitizens themselves—because of the implausible prospect of possibly raising their challenge via PFR at some point—are denied access to relief in district court.

[10] Defendants' reliance on *Ali v. Barr*, 464 F. Supp. 3d 549 (S.D.N.Y. 2020), Reply at 7, is inapposite. There, the challenged policy pertained to filing deadlines in immigration court and thus was "part of the process by which the Alien Plaintiffs' removability will be determined." *Id.* at 558. Policies internal to the conduct of removal proceedings stand in dispositive contrast to the pre-proceeding policy Ms. Chung challenges here.

## CONCLUSION

For the foregoing reasons, and those set forth in Ms. Chung's opposition brief, the Court should deny Defendants' motion to dismiss.


Dated: May 20, 2025                         Respectfully submitted,
        New York, NY


                                            CLEAR PROJECT
                                            MAIN STREET LEGAL SERVICES, INC.
                                            _____/s/_____
                                            Naz Ahmad
                                            Ramzi Kassem
                                            Tarek Z. Ismail
                                            Mudassar Hayat Toppa
                                            CUNY School of Law
                                            2 Court Square West, 5th Floor
                                            Long Island City, NY 11101
                                            (718) 340-4558

                                            EMERY CELLI BRINCKERHOFF ABADY
                                            WARD & MAAZEL LLP
                                            _____/s/_____
                                            Jonathan S. Abady
                                            Katherine Rosenfeld
                                            Sonya Levitova
                                            One Rockefeller Plaza, 8th Floor
                                            New York, NY 10020
                                            (212) 763-5000

                                            HUMAN RIGHTS FIRST
                                            _____/s/_____
                                            Joshua Colangelo-Bryan
                                            121 West 36th Street, PMB 520
                                            New York, NY 10018
                                            (212) 845-5243

                                            LAWYERS' COMMITTEE FOR CIVIL RIGHTS
                                            OF THE SAN FRANCISCO BAY AREA
                                            _____/s/_____
                                            Jordan Wells
                                            131 Steuart Street # 400
                                            San Francisco, CA 94105
                                            (415) 543-9444

11

**LAW OFFICE OF MATTHEW BRAY**
_____/s/_____
Nathan Yaffe
119 West 23rd Street, Suite 900
New York, NY 10011
(646) 253-0580

**JONATHAN HAFETZ, ESQ.**
_____/s/_____
Jonathan Hafetz
1109 Raymond Blvd.
Newark, NJ 07102
(917) 355-6896

*Attorneys for Plaintiff-Petitioner*

12

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the above-named counsel hereby certifies that this sur-reply complies with the word-count limitation of this Court's Local Civil Rules. As measured by the word processing system used to prepare it, this memorandum contains 3,498 words.

*/s Sonya Levitova*
Sonya Levitova
