P5T4CHUC

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     ,
 3   YUNSEO CHUNG,

 4                   Plaintiff,

 5           v.                          25 Civ. 2412 (NRB)

 6   DONALD J. TRUMP, ET AL.,
                                         Conference
 7
                 Defendants.
 8
     ------------------------------x
 9                                       New York, N.Y.
                                         May 29, 2025
10                                       12:10 p.m.

11   Before:

12                 HON. NAOMI REICE BUCHWALD,

13                                       District Judge

14                          APPEARANCES

15   JORDAN WELLS
     NATHAN YAFFE
16   NAZ AHMAD
     RAMZI KASSEM
17        Attorneys for Plaintiff

18
     BRANDON WATERMAN
19        Attorney for Defendants

20

21

22

23

24

25
```

P5T4CHUC

1          (Case called)

2          MR. WELLS:  Jordan Wells from Lawyers' Committee for

3    Civil Rights on behalf of the plaintiff.

4          THE DEPUTY CLERK:  Are the defendants present and

5    ready to proceed?

6          MR. WATERMAN:  Assistant United States Attorney

7    Brandon Waterman on behalf of the government.

8          THE COURT:  If my recollection is correct, Mr. Wells,

9    you were not the attorney of record.  I don't mean you're not

10   involved, but the lawyer last time who spoke.

11         MR. WELLS:  Yeah, I'm joined at counsel table by --

12         MR. KASSEM:  Good morning, your Honor.  That would be

13   me.  Thank you, your Honor.

14         THE COURT:  You're still here.  Good.

15         All right.  So I thought it would be a good idea to

16   begin by reviewing what we might call the lay of the land.

17   Currently, there are two pending motions before the Court, one

18   is the government's motion to dismiss for lack of jurisdiction,

19   and the second is Ms. Chung's motion for a preliminary

20   injunction to enjoin the defendants from taking any enforcement

21   action against her and detaining, transferring, or removing

22   her.

23         So our previous session was, as you know, on the day

24   this case was filed.  And at that time, the Court granted, over

25   the government's objection, a status quo TRO which enjoined the

P5T4CHUC

1  defendants from detaining or transferring the plaintiff pending

2  further order from the Court.

3          Since our first session on March 25th there have been

4  certain legal developments.  Courts in several dates, including

5  New Jersey, Massachusetts, and Vermont, have issued substantial

6  decisions in cases both relevant and informative to the case

7  before me.  However, the decisions of the Second Circuit in

8  *Ozturk* and *Mahdawi*, which are binding authority on this Court,

9  set out the parameters of our conversation today.  All the

10  decisions involving petitioners were grounded on the habeas

11  statute and further in each of the cases finding habeas

12  jurisdiction, the plaintiff was in the physical custody of

13  immigration authorities, having previously been arrested.

14          So to bring the Court up to date, it would be helpful

15  to learn whether the facts particular to Ms. Chung have changed

16  since our last meeting.  And in that regard, can counsel for

17  Ms. Chung confirm to me that the misdemeanor charges against

18  her have been dismissed?

19          MR. WELLS:  Yes, your Honor.  The charges have been

20  dismissed in the interest of justice.

21          And I just want to back up one step, if I can, and

22  mention that our intention to have my co-counsel Mr. Yaffe

23  address the PI motion, and I'll address the motion to dismiss.

24          THE COURT:  That may not be the way this is going to

25  go.

P5T4CHUC

1            MR. WELLS:  Fair enough.

2            THE COURT:  At least not my plan.

3            So further in the same vein, are there any additional

4    facts that the government has learned about Ms. Chung's

5    activities while a student at Columbia that are of relevance to

6    this case?

7            MR. WATERMAN:  We have no updates.

8            THE COURT:  Thank you.

9            So returning to the plaintiffs, and decide who wishes

10   to speak, but one at a time, what is your best case that this

11   Court has habeas jurisdiction now?

12           MR. YAFFE:  Your Honor, this is Nathan Yaffe on behalf

13   of petitioner, Ms. Chung.

14           THE COURT:  She's only a petitioner if she actually

15   has a --

16           MR. YAFFE:  Plaintiff-petitioner, your Honor.

17           THE COURT:  She is described as both in the caption.

18           MR. YAFFE:  Right.

19           So, your Honor, there are several authorities that

20   support that this Court has habeas jurisdiction in this matter

21   based on the imminent detention and the defendant's stated

22   intention to take her into detention at the first available

23   opportunity.  The most on point authority is *Simmonds*, Second

24   Circuit decision in *Simmonds* 326 F.3d 351.  It was relied on in

25   the *Ragbir* decision.  In *Simmonds* the --

P5T4CHUC

1          THE COURT:  I think *Simmonds* is quite distinguishable,

2     right.  That was a state prisoner subject to an ICE order of

3     removal who was currently in custody and who was going to be

4     transferred into ICE custody as soon as he was released from

5     his 23-to-life sentence.

6          Let me be candid with you, we have gone through every

7     case that you have cited in support of your position that even

8     though Ms. Chung is not actually in physical custody nor is she

9     subject to the control of any court, such as someone on bail or

10    someone on supervised release, we have been unable to find any

11    case, and I don't think you have cited one, which says that the

12    threat or potential of imminent arrest is sufficient for

13    habeas.  Every single one of your cases is readily

14    distinguishable on its facts.

15         MR. YAFFE:  Your Honor, with respect to *Ragbir* and

16    *Simmonds*, it is true that in those cases there was a final

17    order of removal.  We don't read the logic in *Ragbir* to turn

18    solely on that nor the logic in *Simmonds* to turn solely on

19    that.

20         In *Simmonds* the Second Circuit engaged in an extensive

21    discussion of the fact that detainers often are lodged, and

22    that was at issue there.  A there was an ICE detainer that was

23    lodged with the state prison.  But they are often lodged and do

24    not result in someone being taken into custody.

25         THE COURT:  No, that is not my experience.  If there

P5T4CHUC

1    is a detainer on someone, on one of my defendants, and

2    immigration has taken the trouble to get one, that person is

3    released by federal authorities, the Bureau of Prisons,

4    directly to immigration.  They may then be bailed.  But it is

5    not a do-not-pass-go situation.  It is the requirement of the

6    law if there is a detainer on a federal prisoner that they not

7    be released to the street, that they go into it immigration

8    custody, that's just not the case.

9            You know, you would have thought all these years with

10    the existence of arrest warrants, that if it was the law, that

11    the mere presence of an arrest warrant would be sufficient to

12    create habeas jurisdiction.  There would be one case that says

13    that.  You don't have one.  We haven't been able to find one.

14            MR. YAFFE:  Your Honor, with respect to federal

15    prisoners --

16            THE COURT:  Just to go back, as I mentioned earlier,

17    every one of the cases that are currently active and similar,

18    every one of those plaintiff-petitioners, they actually only

19    called themselves "petitioners," I think, all literally had

20    been arrested, without question, in custody.

21            MR. YAFFE:  Your Honor, I would point to several facts

22    in the record with respect to ICE's extensive efforts to detain

23    Ms. Chung.  It's undisputed that ICE would be --

24            THE COURT:  I'm not questioning that.  I'm not

25    questioning for a minute that if she does not get relief from

P5T4CHUC

```
 1    this Court, that when they find her they will arrest her.  I'm
 2    not questioning that.  But the concept of anticipatory arrest
 3    is not the same as custody.
 4                MR. WELLS:  Your Honor --
 5                THE COURT:  One of you at a time on each issue,
 6    please.  I don't wish to be double teamed.
 7                MR. YAFFE:  Understood, your Honor.
 8                THE COURT:  You can pass him a note.
 9                MR. YAFFE:  There are two things I would note with
10    respect to this issue of imminent arrest.  We know from
11    experience in other cases that if Ms. Chung is to be detained,
12    there is essentially going to be a race against the clock to
13    get a habeas petition filed before she is transferred miles
14    away.
15                THE COURT:  We'll get to it.
16                MR. YAFFE:  Thank you, your Honor.
17                I would just note that the decisions out of the
18    District Court of New Jersey and other cases have recognized in
19    this course of litigation that there is not meant to be a gap
20    in the availability of habeas relief.  And just as a practical
21    matter, we are obviously concerned about the fact that any
22    version of her going into detention would result in potentially
23    an indefinite gap of the availability of habeas relief without
24    looking into --
25                THE COURT:  It's not a result that I would encourage.
```

P5T4CHUC

1    Okay.  But the law is the law, and if I do not follow the law,

2    we're just destroying the whole system.

3                MR. YAFFE:  Of course, your Honor.

4                The other thing that I would note is although I take

5    your Honor's point about the unusual nature of invoking habeas

6    relief in the anticipatory detention context, although we do

7    think that *Ragbir* and *Simmonds* do support --

8                THE COURT:  But factually they don't, and you know

9    that.

10               MR. YAFFE:  Factually they are distinguishable, but I

11   think the reasoning in those decisions did rely heavily on the

12   fact of imminent detention.

13               The other thing I would note, your Honor, is this is a

14   hybrid petition complaint.  And in *Valez-Chavez*, 549 F. Supp 3d

15   300, another court in this district did issue APA relief,

16   injunctive relief, barring detention in the context of someone

17   who had been detained and moved to the District Court of New

18   Jersey.  And the Court in that case recognized --

19               THE COURT:  They were detained.

20               MR. YAFFE:  But, your Honor, my point with respect to

21   this is we had also sought injunctive relief this is a hybrid

22   petition and complaint.  As to the APA, you have the equitable

23   authority to enter injunctive relief under the APA

24   notwithstanding the possibility of habeas --

25               THE COURT:  I'm sorry.  None of the cases, and I don't

P5T4CHUC

1    think the APA is appropriate here.  And the fact is, before I

2    issue any preliminary injunctive relief I need jurisdiction.

3    Habeas is the only jurisdiction that any of the cases have

4    relied on.  And at the moment my view, as I think I have

5    expressed, is there is no such thing as anticipatory habeas

6    that every single one of yours cases involves a person who was

7    truly under the thumb of a court and whose freedoms were

8    directly affected --

9              MR. YAFFE:  Your Honor --

10             THE COURT:  -- at the time that they filed.

11             MR. YAFFE:  Your Honor, if I may just add one

12   additional point on this issue which hasn't been as developed

13   in the briefing.

14             THE COURT:  That's what you don't notice, in your

15   complaint the word "habeas" only appears or basically only

16   appears, maybe one other time in your jurisdiction section, you

17   don't even argue it in your complaint.  I just point that out.

18             MR. YAFFE:  Your Honor, I would just wish to note that

19   as the Supreme Court has directed in evaluating habeas

20   jurisdiction it's appropriate to look at the long historical

21   sweep of habeas authority in the past.  And there is robust

22   English case law supporting the historical use of habeas to

23   challenge conscription into the English Navy.  I think that

24   this is not so far anticipatory detention or liberty

25   infringement is not so far from the core of historical habeas

P5T4CHUC

1    as it may appear from the recent cases.

2            THE COURT:  All right.  Bottom line, you don't have a

3    decision in the United States, in our multi-year history,

4    supporting the position that you're taking.  I understand you

5    want to argue the purpose, perhaps, or the underlying

6    reasoning, but there are no on point decisions.

7            MR. YAFFE:  The first time thing I would note, your

8    Honor, is it's extraordinarily unusual to have the clarity of

9    facts that suggest that ICE is imminently going to detain

10   someone that we have here.  So I think there aren't decisions

11   that we are aware of that are rejecting the use of habeas in

12   this context.  It's rather that it's an unusual factual set of

13   circumstances for habeas to -- the need for habeas to arrive.

14           THE COURT:  There are hundred of years of situations

15   that may not involve ICE, but there are many other state and

16   federal authorities who have the power to issue arrest warrants

17   on, yet there are no cases.

18           So let's turn to another question.  I don't understand

19   how the plaintiff can seriously argue that you are not

20   attempting to stop the commencement of removal proceedings

21   against Ms. Chung.  And to play that out, if you are, as it

22   seems to me you are attempting to stop the commencement of the

23   proceedings against her, does it not follow that 8, U.S.C.

24   1252(g) applies and as a result this Court lacks jurisdiction?

25   If I don't have habeas jurisdiction and we are now into the

P5T4CHUC

1    complaint side of your complaint, given the relief that you

2    asked for, given the reality of what you want, how can you

3    possibly argue that you are not trying to stop the commencement

4    of the removal proceedings?

5              MR. WELLS:  Thank you, your Honor.  I'll take that

6    question.  On that question we think *Ozturk* is both controlling

7    and dispositive of your Honor's question.  Because *Ozturk* is

8    not rooted in the presence or absence of habeas jurisdiction.

9    Ozturk is looking at the question --

10             THE COURT:  It's based on habeas jurisdiction, sir.

11             MR. WELLS:  But the legal question that it's answering

12   would apply equally --

13             THE COURT:  Hold on.  *Ozturk* is a good case for the

14   plaintiffs, basically, right.  In *Ozturk*, *Ozturk* was not

15   challenging any of the 1252(g) discretionary decisions;

16   correct?

17             MR. WELLS:  And neither are we.  Yes, correct.

18             THE COURT:  All right.  That's my question.  How do

19   you possibly claim that you are not challenging the

20   commencement of the proceeding against her?  You are arguing

21   that it is unconstitutional to do so, right.  Under *Ozturk* you

22   can do that so long as -- and remember, in *Ozturk* explicitly --

23   and the circuit recited that -- waived any right or waived any

24   challenge, I should say, to the commencement of the proceedings

25   and to their continuation.  You're not waiving that.  And then

P5T4CHUC

1    they proceeded to say, however, if you have habeas

2    jurisdiction, which they found, in that context you can

3    challenge the legality of the administrative immigration

4    proceeding.  But it created a two-track approach.  Immigration,

5    that was going to continue.  Meanwhile, as the habeas case

6    raising the constitutional issues that you want to raise, would

7    also continue.  That is not remotely the posture that you are

8    seeking to have this case proceed in.  So I don't understand

9    why you think *Ozturk* is really a good case for you.  It seems

10   to me to suggest another approach.

11           MR. WELLS:  There are several things to unpack about

12   that.  Let me start with this, our position from the start of

13   this case and through today, is that ICE could, at any moment,

14   commence proceeding against Ms. Chung, and we have no objection

15   to that.  There is nothing in our complaint or motion that

16   prevents the commencement of removal proceedings.

17           THE COURT:  Excuse me?

18           MR. WELLS:  Removal proceedings commenced with the

19   filing of an NTA.

20           THE COURT:  One second.  Prayer for relief, item four,

21   enjoin defendants' respondents from taking any enforcement

22   action against Ms. Chung arising directly or indirectly from an

23   investigation into the applicability of the foreign policy

24   ground.  You want to enjoin them from detaining her, from

25   transferring her, from removing her, and you want to set aside

P5T4CHUC

1    the policy.  That is the basis for the proceeding.  And, in

2    fact, if I have misread that, and I should not understand that

3    as that you are not really objecting to the commencement of the

4    proceeding, but what you are concerned about -- and I think

5    understandably -- is that you don't want her arrested.  Is that

6    right?

7         MR. WELLS:  That's right.

8         THE COURT:  In other words, the proceeding could

9    commence if it is commenced, shall we say, in a more benign,

10    civilized fashion.  So let me make a suggestion to you.  In

11    fact, let me reserve my suggestion and let me just make sure --

12    let me go through some of the other questions I had because I

13    think it will be helpful.

14         So let me ask the government, Mr. Waterman, assume

15    *arguendo* with me that this Court has habeas jurisdiction and

16    that there is no longer a challenge to the commencement of the

17    removal proceedings, is there any barrier under the current

18    Second Circuit law to this Court entertaining a bail

19    application by Ms. Chung?  Again, assuming *arguendo*, that the

20    Court has habeas jurisdiction, and that there is tho longer a

21    challenge to the commencement of the removal proceedings, is

22    there any barrier under existing Second Circuit law for this

23    Court to entertain the bail application by Ms. Chung?

24         MR. WATERMAN:  Sure, your Honor.  I would say, one,

25    your hypothetical assumes that the petitioner, I think, is in

P5T4CHUC

1    custody, that she has been detained.

2         THE COURT:  Sir, let's engage in a serious

3    intellectual conversation.  It's relevant.  Okay.  I'm not

4    asking you to concede that there's habeas jurisdiction.  I'm

5    asking you a question.  Assume *arguendo* for the purpose of my

6    question, that this Court does have habeas jurisdiction.  And

7    assume further, for the purpose of the question only, I'm not

8    asking you to concede a thing, that the plaintiff is no longer

9    challenging the commencement of the removal proceedings.  Is

10   there, under existing Second Circuit law, in other words, I

11   have put to you, essentially, the fact pattern in *Ozturk* and

12   *Mahdawi*, and I'm not asking you to like the results of those

13   cases, but they are what they are, and they are binding on all

14   of us.  Is there any reason that this Court could not entertain

15   a bail application by Ms. Chung if those two assumptions turn

16   out to be correct or reality?

17        MR. WATERMAN:  Right.  My understanding of the

18   hypothetical is that if they are in a similar situation as

19   *Ozturk* and *Mahdawi*, they are detained.  And if they are

20   detained, the Court would have habeas jurisdiction.  And

21   setting aside their challenge to the commencement of

22   proceedings, there is a path --

23        THE COURT:  Excuse me.  You've turned my question in a

24   way that I didn't intend it.  I'm not asking you to assume that

25   Ms. Chung has been arrested.  I'm just asking you to assume

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P5T4CHUC

1   that this Court has decided that I have habeas jurisdiction,

2   however I get there, just assume it.  And further, that the

3   plaintiff is no longer challenging the commencement of the

4   removal proceedings.  Those are the facts.  I have concluded I

5   have habeas jurisdiction.  The plaintiff is no longer

6   challenging the commencement of the removal proceedings.  In

7   those two circumstances, is there any barrier to this Court

8   entertaining a bail application?

9            MR. WATERMAN:  I'm not aware of any authority for bail

10   in a preemptive bail application for somebody who is not

11   detained.

12            THE COURT:  This is this not a matter of preemptive

13   bail.  The government, on the criminal side, before any

14   appearance in court often agrees on a bail package with a

15   defendant.  There is nothing bizarre about that.  I'm not

16   asking you to agree to anything.  But this notion that there is

17   nothing called preventive bail, you know, assumed bail or

18   something, it's not the case.  And nor does someone have to be

19   under arrest for bail to be set, even on the criminal side.  So

20   I don't think this is a real problem.  So can I get an answer

21   from you on this question or not?

22            MR. WATERMAN:  I don't mean to be difficult, your

23   Honor, but I'm not aware of the authority for bail in the

24   immigration context when somebody is not arrested and not

25   detained to have a district court issue essentially an order --

P5T4CHUC

```
1            THE COURT:  We wouldn't be doing it in the immigration

2    context.  We would and doing in the habeas context.  Just as

3    the Second Circuit and Judge Sessions and the others have

4    granted bail while there is an immigration proceeding, and they

5    have done it in the context of the habeas proceeding.

6            MR. WATERMAN:  Yes, your Honor.  They certainly did,

7    but those petitioners were detained.  In the Second Circuit's

8    case, *Mapp v. Reno*, allowed for bail pending the review of a

9    habeas petition for somebody who was detained.  I don't mean to

10   be difficult, but that is the distinction.  I think it is

11   important.

12           THE COURT:  We'll get to whether she will be detained

13   or not.

14           Let me ask another question.  Is there any dispute

15   that the commencement of a removal proceeding is accomplished

16   by the service of a notice to appear, pursuant to 8, U.S.C.

17   Section 1229(a)(1)?  Do you have that statute in front of you?

18           MR. WATERMAN:  I don't have 1229(a)(1) but I know I

19   cited it in my, I believe it was my reply brief, your Honor.

20           THE COURT:  I can help you out.  I can read it out

21   loud.

22           MR. WATERMAN:  Sure.

23           THE COURT:  Give me a minute.  And also I'll read from

24   the Second Circuit's opinion, and maybe that's just as easy,

25   but give me a second on that, and the *Ozturk* case.  It says,
```

P5T4CHUC

1   "filing a notice to appear in an immigration court is the

2   action that commences removal proceedings.  See 8, U.S.C.

3   Section 1229(a)."  And if you want I can also read that out

4   loud.  I'm having a little trouble finding the decision, but I

5   think is sufficient for my purposes and yours.

6        MR. WATERMAN:  Sure, your Honor.  And I'll say, yes,

7   the commencement of proceedings, part of that is the file of

8   the NTA, the charging document with the immigration court.  But

9   under Section 1229(a)(1) it requires the service of a notice to

10  appear on the alien in order to initiate removal proceedings.

11       THE COURT:  Absolutely, I agree with you.

12       MR. WATERMAN:  So ICE would need to first serve a

13  notice on the alien before it can actually file it with the

14  immigration court to commence proceedings.

15       THE COURT:  Okay.  By the way, I know from your papers

16  that ICE, twice, tried to serve a notice to appear, as well as

17  an arrest warrant, a warrant on Ms. Chung both in New York and

18  in Virginia; correct?

19       MR. WATERMAN:  Yes, your Honor.  I believe ICE's

20  declaration set forth their efforts to locate --

21       THE COURT:  And do you have a copy of that notice to

22  appear with you in court?

23       MR. WATERMAN:  I do not, your Honor.  I don't know

24  whether they finalized it until they --

25       THE COURT:  Well, they must have finalized it before

P5T4CHUC

1    they tried to serve it.

2            MR. WATERMAN:  Certainly, that's fair.  I don't have a

3    copy, your Honor.

4            THE COURT:  Have you ever seen it?

5            MR. WATERMAN:  I have not seen it.

6            THE COURT:  Okay.  We may want to break for you to get

7    us a copy.  Have it sent to you.  In your war room downstairs,

8    you can print it out if it's emailed to you.

9            But you're totally right that the notice to appear has

10   to be served.  I agree with you.  But it's also correct that

11   the notice to appear is sufficient without the service of a

12   warrant of arrest, correct, to start a removal proceeding.

13           MR. WATERMAN:  That is correct.  You don't have to be

14   arrested or detained in order for the commencement of

15   proceedings.  I believe the statute allows service of the NTA

16   either in person, which often times would occur at an arrest I

17   think via mail, at the last known address or on counsel's

18   representatives.

19           THE COURT:  Right.  Okay.

20           MR. WATERMAN:  ICE, at this point, they don't have a

21   current working address, so they can't mail it to an address

22   where she is no longer present.

23           THE COURT:  But it says the alien's counsel of record.

24           MR. WATERMAN:  If she has counsel that will accept

25   service and enter an appearance.

P5T4CHUC

1          THE COURT:  I see at least four, and there must be

2    over a dozen who have added their names.  So the question that

3    I have is assuming that the government didn't make an effort to

4    serve counsel out of respectful deference to my TRO, is there

5    any barrier to the government utilizing that statutory

6    authority to serve, I'd say Mr. Kassem, but even to go further,

7    if Mr. Kassem agreed to accept service of the notice to appear,

8    wouldn't that eliminate any reason or need to arrest her?

9          MR. WATERMAN:  I won't remark on whether it eliminates

10   the need to arrest.  I think that is within the discretion of

11   ICE and the Department of Homeland Security.

12         With respect to the question of whether any of the

13   lawyers representing her can accept service, I think that's a

14   question for them.

15         THE COURT:  I agree with that.

16         MR. WATERMAN:  Generally they have to enter an

17   appearance with the immigration authority before they can be

18   deemed an attorney of record.

19         THE COURT:  Excuse me?  I just didn't hear you.

20         MR. WATERMAN:  There are forms and notices of

21   appearance in immigration proceedings.  I don't know what the

22   form numbers are.  But it's not the same.  You can't just say

23   habeas counsel is counsel for all purposes for that individual.

24   So usually when somebody is being represented in immigration

25   court they enter a notice of appearance.

P5T4CHUC

1          THE COURT:  But here is the intellectual problem with

2     that, given that the statute permits service on the alien's

3     counsel of record of the notice to appear, and if the notice to

4     appear is the first document, it's a chicken and egg problem.

5          MR. WATERMAN:  I understand your point there, your

6     Honor.  But the point I'm making is there could be

7     communications and contact outside of the immigration court

8     proceedings.

9          THE COURT:  But there has been contact with lawyers

10    representing Ms. Chung before this case was filed in connection

11    both with the search warrant and some other calls to her.  I

12    don't remember the details of that but there is no question

13    that there has been contact with counsel.  Or maybe the

14    simplest way to cut through all of this is for me to pose the

15    following:  If counsel of record in this case would agree to

16    accept service of the notice to appear, it seems to me that

17    such service would moot the argument that the plaintiff is

18    trying to challenge the commencement of the proceeding.  And

19    given that once an alien -- and I use the term in the statute,

20    I don't mean it any other way -- is served with a notice to

21    appear, there are restrictions on that alien that are similar

22    to the restrictions of someone on bail or on supervised

23    release.  And those bail restrictions or supervised release

24    restrictions in the habeas context are considered custody.  So

25    it seems to me, if counsel is prepared to accept service of the

P5T4CHUC

1    notice to appear, that the custody issue is resolved.  And then

2    if the custody issue is resolved, I don't see any reason that

3    she is now in custody, the Court does not have authority to

4    address the issue of bail.  I have said at the very first

5    hearing that if Ms. Chung had even been charged with a felony,

6    she was bailable.  All the other -- and I checked earlier

7    today, there are no more facts about Ms. Chung to put on the

8    record.  The criminal matter is gone.  And I don't know of

9    anything about her that would make her non-bailable under any

10    traditional analysis of bail.  And the traditional analysis of

11    bail is the same in the immigration context as it is in the

12    criminal law context.  It's danger to the community and risk of

13    flight.  I don't think there is -- I don't think it's an issue.

14    And if she fled, you know, the government in this case wouldn't

15    care, so it's not a problem.

16          That is my thinking, and I sort of would suggest that

17    maybe counsel confer and speak to Ms. Chung because I think

18    it -- let me say, I think it's a win-win.  In other words, the

19    government can, under this scenario, puts us where *Ozturk* and

20    *Mahdawi* are, two parallel tracks.  The government really only

21    wants one.  I appreciate that.  And the plaintiff only wants

22    one.  It's just that you want a different one, but the result

23    of the case law is both.  And if you have both, that puts you

24    where you are under this scenario.  There is no need to arrest

25    her.  She is spared, you know, the trauma of that.  It's true,

P5T4CHUC

1    you know, the plaintiff has to drop certain arguments.  You

2    know, but I think you get to the same place, you know, that

3    you'd be after going through a lot worse, so to me it makes a

4    lot of sense.

5         MR. KASSEM:  Your Honor, thank you.  Would it be okay

6    for us to take a minute just to confer?

7         THE COURT:  You can take more than a minute.  I don't

8    care if you talk about this for a half an hour or more.  I'm --

9    you know, honestly, I know you knew about the provision about

10   accepting service because you eliminated it from, I think it's

11   Footnote 3 on page 3 of your sur-reply brief when you quoted

12   the statute, so I know you know about it.  Please, take the

13   time that you need.  Tell me if it's an agreeable system.  If

14   it is, I would, frankly, propose to address the issue of bail

15   now, enter an order, and you would have to have, you know,

16   Ms. Chung come to court, to the courthouse, has to sign the

17   bail order just like in every criminal case.

18        MR. KASSEM:  Your Honor, to address the footnote

19   admission that your Honor flagged.  It's simply for the reason

20   that you've identified which is that there is this little

21   conundrum with the regulatory reference to counsel of record

22   being the counsel of record on the immigration side, and that's

23   usually for a scenario where an NTA has been filed with the

24   immigration court and there is a superseding NTA.  But there

25   are ways around that and we can --

P5T4CHUC

```
1         THE COURT:  Let me say, I don't think it's my job and
2   I don't intend to intrude on the internal processes of
3   immigration.  If there is a document that counsel needs to sign
4   to satisfy the immigration authorities before my proposal of
5   your accepting service of the notice to appear can take place,
6   I have no problem adjourning this hearing.
7         MR. KASSEM:  Your Honor, rather than adjourn, we would
8   like to get as much done as possible today, particularly what
9   you just contemplated by way of bail.  But if the Court would
10  allow a 30-minute recess, that would allow us to confer with
11  our team and our client remotely and come back an hopefully
12  resolve as much as possible today.
13        THE COURT:  It's really not -- well, that's fine.  The
14  question is, I know what to do with all the people at the table
15  here, but I've rarely done a 30-minute break with a full
16  courtroom.
17        MR. KASSEM:  Even a 15-minute break.
18        THE COURT:  No, it's all right.  The amount of time
19  doesn't matter.  It's not the issue.  Do we have a CSO in the
20  courtroom?  Good.  Do you need a friend, or do you think that
21  these people will behave themselves enough so that just one of
22  you is sufficient?
23        COURT SECURITY OFFICER:  I'm fine with that.
24        THE COURT:  So that's what we'll do.  We'll take a
25  half an hour which gets us back about 20 after 1:00.
```

P5T4CHUC

1              MR. WATERMAN:  Your Honor, if may I be heard, before

2      we break, on that?

3              THE COURT:  Sure.

4              MR. WATERMAN:  I don't know that I'm going to be in a

5      position to discuss whether ICE will accept that alternative

6      for service.  That's a question that's up to them, and it's in

7      their discretion how they commence proceedings.  That's all

8      wound up in 1252(g) for commencement proceedings.  It's an

9      action or decision to commence proceedings.

10             THE COURT:  Well, they want to not commence this one?

11     The plaintiffs would love that.

12             MR. WATERMAN:  I understand, your Honor.  But it's a

13     question for them.  I don't know that I'm going to get an

14     answer within the next 15 minutes or 30 minutes.

15             THE COURT:  I also want -- let me say this, that

16     raises an issue.  You have to see the notice to appear before

17     you agree to accept it, and he doesn't have it.  So the first

18     thing is, he should get it.  Because I can imagine some

19     variations on the theme that may not be so acceptable to the

20     plaintiff.  But it seems to me -- I'm not asking ICE to do

21     anything that the statute doesn't provide for, right.

22             MR. WATERMAN:  That I understand, your Honor.  But

23     it's within ICE's discretion how they do it.  So if they choose

24     not to do it in that manner, they have a right under the

25     statute to choose the manner in which they commence those

P5T4CHUC

1    proceedings.

2                THE COURT:  You've got to be kidding.

3                MR. WATERMAN:  It's something I would need to run by

4    the agency, your Honor.

5                THE COURT:  Look, the statute talks about when

6    personal service is not practicable, and it's not here because

7    Ms. Chung is not surfacing so that she can be arrested.  Then

8    service by mail to the alien, again, not practicable because

9    you don't know where she is.  I don't know where she is.  Or to

10    the counsel of record, if the way to go.  I don't even -- it

11    seems to me that having eliminated in person or by mail to her,

12    the third alternative is serving counsel.

13                MR. KASSEM:  Your Honor, I would just add that

14    actually there are two alternatives, as your Honor pointed out,

15    service through counsel, and we can work out specifics of that

16    but by mail remains possible.  Similar to countless

17    international students in the United States, and frankly, U.S.

18    citizen students as well, Ms. Chung's domiciled and her home

19    address is in Virginia.  So she is in compliance with the

20    requirement to keep a regular current address with USCIS.  The

21    Department of Homeland Security is clearly aware of the

22    Virginia home address because they've dispatched agents to that

23    address.  And like many students, she has two addresses:

24    During the semester, her dorm in whatever city she's in, so

25    it's New York City.  But her home address is her current

P5T4CHUC

address.  So she is in compliance with the requirement to have

an address with USCIS.  Service by mail was possible at the

time the agents visited her parents and tried to apprehend her.

It remains possible today, that is an option for the Department

of Homeland Security.  It's a good question for the government,

why they've chosen so far not to exercise that option.  But

they could have served her by mail.  They could still do that

today, and do it through us if we are able to work out the

modality and the way around the conundrum that your Honor

surfaced earlier.

              THE COURT:  It is clear that if ICE wants to actually

commence this proceeding that there is an easy, efficient, and

statutorily-provided-for mechanism to do that.  If ICE chooses

not to utilize that approach, it says a great deal about the

motivation of ICE, and that will play a role in future rulings

in this case.  I have offered, suggested a mechanism where the

government can proceed --

              (Discussion off the record)

              THE COURT:  As I said, the government -- I offered the

government a mechanism to proceed with a removal proceeding and

set forth a scenario whereby the Court would have habeas

jurisdiction and thereby placing this case in essentially the

same posture as the two Second Circuit decisions without the

necessity of a totally unnecessary arrest.  I would hope that

parties acting in good faith, who will be given the opportunity

P5T4CHUC

1    to address this case on the merits, will accept this proposal.

2    Now, I'm not sure, given what Mr. Waterman has said,

3    and I understand that I think I've somewhat surprised everyone

4    with this suggestion. Maybe some of you have thought about it

5    before and reject it for some reason. I don't know. But it's

6    my idea. It doesn't come from any submission. So I do want

7    everyone to have a full chance to evaluate it. And if you need

8    me -- I would hope you'd both say yes, because I think it's the

9    right answer, but if someone wants to say no, I will deal with

10   that. But I think there is an attractive solution here and a

11   very unattractive position as well.

12   So I don't know if it makes sense to pick up in half

13   hour. I think Mr. Waterman may need some more time. I

14   definitely need the notice to appear. I want to see what it

15   says, and I think you all absolutely understand what I'm

16   talking about.

17   MR. KASSEM: Absolutely, your Honor from our

18   standpoint, we've often wondered why the Department of Homeland

19   Security has elected not to serve our client by mail. The only

20   reason we could come up with is because they want to notice the

21   proceedings in Louisiana, and they would prefer not to notice

22   the removal proceedings in New York or in Virginia.

23   THE COURT: We did some further research on that just

24   last night and see that the law, the statutory law and the

25   regulatory law really works on the assumption or presumption

P5T4CHUC

1   that the proceedings will be where the alien is.  And I agree

2   with you there are, I think, two options here that no one could

3   be critical of, depending on which option the immigration

4   chose.  There's something to be said for home addresses, stable

5   beyond one year.  She is a junior.  She has one year left.

6   She's a senior now I guess.  There's one year left.  Maybe it

7   makes sense to be in Virginia.  Maybe it makes sense to be

8   here, that is of no moment to me.  To me those are the only two

9   options which are consistent with the practice in thousands of

10  cases.

11          MR. KASSEM:  That would be our expectation as well.

12  Your Honor.

13          THE COURT:  If there is some, you know, effort to pick

14  a far-away location, then I would understand why plaintiff's

15  counsel would not be accepting that.

16          MR. KASSEM:  Your Honor --

17          THE COURT:  Let me just say one other thing.  It's

18  clear from *Ozturk* that the proceeding there was going to

19  continue to be in Louisiana, but she was going to appear

20  remotely.  So this whole issue of remote appearances may

21  change, you know, the traditional dynamic.

22          MR. KASSEM:  Your Honor, to your point about the

23  typical practice being that the removal case follows the body

24  of the noncitizen in the removal proceeding.  In the *Ozturk*

25  case, as soon as she was released on bail, and she returned

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P5T4CHUC

1    north to the Boston area, her immigration case followed.

2            THE COURT:  Did it?  I didn't understand that.

3            MR. KASSEM:  That's a recent development, your Honor.

4    And the government actually sought to change the immigration

5    case to venue it back to Louisiana.  And that motion was denied

6    by the immigration court in Boston, in the Boston area.

7            THE COURT:  I said the very first time we met, "no

8    Louisiana here," that may continue to be the reality.  Because

9    I did not understand that.  I just read the opinion which said

10   that she could appear remotely, which, I think the context was

11   it's not disruptive to the government.

12           MR. KASSEM:  That's right.  And your Honor, these

13   developments that I've described post date the opinion.

14           THE COURT:  Well, we are trying to stay on top of all

15   this.

16           MR. KASSEM:  I understand.  We truly appreciate that,

17   your Honor.

18           On our end, we appreciate the Court's suggestion.  And

19   we would have, really, no objection to it.  From our

20   standpoint, as a practical matter, if the filing of an E 28

21   with the immigration court is not possible because a notice to

22   appear has not been lodged, one alternative could be to file

23   what's called a G-28 with the Department of Homeland Security

24   which tells them that we are counsel for Ms. Chung for purposes

25   of dealings with DHS.  Perhaps that's sufficient to effect

P5T4CHUC

1    serving the NTA on counsel.

2          But I will reiterate that the department today, as it

3    did on day one, has the option to mail serve the NTA to

4    Virginia or to New York.  We believe New York would be

5    consistent with the practice, as you put it, thousands of cases

6    because Ms. Chung is here.  She will probably work here.  She

7    is interning here this summer.  After she graduates next year

8    she'll probably have a job here like may Columbia graduates.

9    As you know, your Honor, she is not only in good standing, she

10   was able to achieve a near-perfect GPA this semester despite --

11         THE COURT:  She did better than I did.

12         MR. KASSEM:  Better than I did.  Better than most of

13   us here did, your Honor.

14         THE COURT:  I wasn't too shabby but you know.

15         MR. KASSEM:  I don't comment on my own.

16         But your Honor, the only thing is we understand the

17   Court's proposal, as a way to moot a need to decide whether or

18   not we were challenging, quote-unquote, commencement.  The

19   Court will appreciate that our position is that we were not

20   challenging commencement, but this is a way around that.

21         THE COURT:  I was having trouble with that issue,

22   yeah.

23         MR. KASSEM:  Understood, your Honor.  And as long as

24   this is not taken as a concession or our part, we are entirely

25   receptive to the Court's proposal.  We'd be willing to quickly

P5T4CHUC

1   confer with our client and give you a final answer just to make

2   the record on that.  Should Mr. Waterman want to try to call

3   the client agency during that 30-minute recess, we would

4   appreciate it just for the purpose of clarity and closure for

5   our client.  You know, she completed a successful semester of

6   study.  She is now interning.  Having some clarity, some

7   resolution so she can go on with her life would be truly

8   welcomed.  We appreciate the Court's diligence, and we are

9   hopeful that Mr. Waterman can actually get some information

10  from his client.

11          THE COURT:  But you also need the notice to appear.

12          MR. KASSEM:  Of course.

13          But even in so far as the answer to the threshold

14  question, would they be willing to serve through counsel here

15  in New York, we would be willing to accept service, and then

16  they would notice proceedings here in New York regardless of

17  the contents of the NTA.

18          THE COURT:  Let me just say broadly that, you know, as

19  I recited at the outset, there have been serious legal

20  developments since we were first here and since this group of

21  cases were commenced.  I think it's important for everyone,

22  both sides to recognize that.  As I call it, the lay of the

23  land as changed, and we are where we are today.  And that

24  includes the government losing a number of arguments that it

25  advanced.  That is something that may be disappointing, but

P5T4CHUC

1    it's reality.  And we should be thinking -- everyone should be

2    thinking, where are we today?  What do the Second Circuit cases

3    tell us is the way forward?  I'm just trying to get us into,

4    painlessly, the way forward that the Second Circuit has

5    blessed.

6           So Mr. Waterman, I know you want to say something.

7           MR. WATERMAN:  Sure.  With respect to taking a

8    position, obviously I don't have authorization, standing here,

9    to agree one way or another.  That's a question for the client

10   agency.  I don't know how much time will be needed and who

11   needs to be conferred with on that.  So it may not be practical

12   to briefly adjourn this.  I may not have an answer in the next

13   30 minutes or even an hour.  If this the path your Honor would

14   like to proceed down, I think the better course would be to

15   adjourn and come back at another date once I have had an

16   opportunity to confer with the folks who need to be conferred

17   with.

18          THE COURT:  Let me say, next week is the judicial

19   conference of the Second Circuit.  The courthouse is going to

20   be pretty empty, but there is always someone here so don't pull

21   any fast ones.  I can be here next Thursday, but I'm physically

22   just not going to be local until then.

23          MR. KASSEM:  Your Honor, a friendly amendment to what

24   my colleague proposed.  Is it possible, at least as a first

25   step, to maybe adjourn for an hour, as he was suggesting.  See

P5T4CHUC

1    what we can do, come back on the record and then if, sort of, a

2    further adjournment is necessary we can discuss it then?

3              THE COURT:  That's fine.  That's okay.

4              MR. WATERMAN:  No objection.

5              THE COURT:  All right.  So we'll come back at ten

6    after 2:00.

7              MR. KASSEM:  Thank you, your Honor.

8              MR. WATERMAN:  Thank you, your Honor.

9              (Recess)

10             THE COURT:  We're back in session.  So I guess I can

11   hear some report of your conversations.

12             MR. KASSEM:  Thank you, your Honor.  We are grateful

13   to the Court for its time and recess.

14             We were able to refer to our legal team and Ms. Chung.

15   Ms. Chung is, in keeping with the Court's proposal or

16   suggestion, Ms. Chung would be prepared to appear in this

17   courtroom within the hour, should that be the way we end up

18   proceeding.  We also have an authorized G-28 form that should

19   enable the Department of Homeland Security to effect service

20   through us as counsel if that's the way they want to move

21   forward and of course the option to mail the notice to appear

22   for deportation proceedings to counsel, to Ms. Chung in New

23   York remains on the table.  We believe New York would be more

24   appropriate for the reasons discussed earlier.  That's our

25   report, and we are prepared to proceed today per the proposal

P5T4CHUC

1    that the Court outlined earlier.

2            THE COURT:  Well, unless my proposal is accepted, I

3    don't think she should appear.

4            MR. KASSEM:  Understood, your Honor.  We just wanted

5    to make sure you knew all the options were on the table.

6            THE COURT:  Okay.  So, in other words, the report from

7    the plaintiff's side is that the Court's proposal that counsel

8    accept the notice to appear is agreeable?

9            MR. KASSEM:  Yes, your Honor.

10           THE COURT:  And as I indicated earlier, my view is

11   that the service of the notice to appear results in sufficient

12   constraints on Ms. Chung's freedom of action to trigger habeas

13   jurisdiction, and that consistent with the other parallel

14   cases, the Court would be prepared to address the issue of

15   bail.

16           MR. KASSEM:  Thank you, your Honor.

17           THE COURT:  All right.  So Mr. Waterman?

18           MR. WATERMAN:  Yes, your Honor.  I do not have

19   anything concrete to present to the Court at this time.  I've

20   been unable to obtain a position in the short time that we took

21   a recess.  It's certainly a question for DHS and ICE to run

22   through and decide how they wish to proceed.  So I'm not

23   prepared to provide a response today.

24           THE COURT:  Okay.  And have your clients given you a

25   timeframe for them to make a decision?

P5T4CHUC

1      MR. WATERMAN:  I don't know how long it takes.  I
2  think --
3      THE COURT:  When I was at the U.S. Attorney's Office
4  in the civil division we had a contact person, often in the
5  general counsel's office in the agency that we were
6  representing.  Do you have a contact person?
7      MR. WATERMAN:  Yes, your Honor.  And I spoke with that
8  contact, but he is not authorized himself to make that
9  decision.  It has to go through further chains before a
10  decision can be made, and I don't know how long that will take.
11  There are also decisions, I think, within the Department of
12  Justice.  I elevated on my end, but I have not been able to
13  reach those individuals.  I think they are both in hearings
14  today as well.  So I simply don't have --
15      THE COURT:  Well, I know that delays are not ideal
16  from Ms. Chung's personal perspective, but I think the blow can
17  be softened by the fact that the temporary restraining order
18  will remain in effect because there's a perfectly reasonable
19  position that's been proposed by the Court, accepted by the
20  plaintiffs that permits the defendants to proceed
21  constructively without the unnecessary imposition of distress
22  and pain.  And I would think that ought to be accepted but
23  there shouldn't -- the inability to respond today should not
24  result in a lifting of the restraint on an arrest of Ms. Chung.
25  So we'll, again, keep the status quo.

P5T4CHUC

1          I also, you know, think that it's reasonable to

2     conclude that the plaintiff's counsel's willingness to accept

3     the notice to appear really moots the issue of whether the

4     plaintiff is challenging the commencement of the proceeding

5     because there is no question by statute, by Second Circuit law

6     that a removal proceeding is commenced by the surface of a

7     notice to appear.

8          As I indicated earlier, if a notice to appear is

9     served, it does create a habeas jurisdiction.  If for some

10    reason the government is unwilling to agree to service as

11    provided by statute, I think that, as I said, the acceptance of

12    the notice to appear really moots the stripping argument that

13    the government's motion was based on.  And I guess -- I think

14    we've just wound up, you know, there is potential federal

15    question jurisdiction which really hasn't received much

16    attention.  I certainly haven't, you know, pursued that

17    intellectually.  It doesn't seem crazy, but the reality is that

18    at any point if the temporary restraining order somehow was

19    lifted and there was an arrest, we'd be right back to habeas.

20    And part of my whole point here is I haven't really asked the

21    government to not wind up where, under the Second Circuit law,

22    they would be in any event.  The only thing that I guess

23    arguably they want is to engage in a formal arrest, which is

24    totally unnecessary to commence a removal proceeding, and leave

25    aside the pejoratives that might be attached to the action.

P5T4CHUC

1            So I told you that I can be back next Thursday in

2   court.  I would trust that that's sufficient for the

3   government, and I would urge the government to let me -- I

4   mean, I'm not going to be incommunicado.  The judicial

5   conference is not in Antarctica.  I mean, the cost of

6   transporting us all there is just too expensive to do, so we

7   will have to just stay in New York City.  So I would trust that

8   the government would let plaintiff's counsel know and the Court

9   what to expect so we can proceed better, if it's next Thursday.

10  Okay.  Is that fair?

11           MR. KASSEM:  Yes, your Honor.  And if I can just make

12  a record on a couple of points.  Should for wherever reason the

13  government choose not to proceed by notice to appear,

14  petitioner certainly agrees with the Court that there might be

15  a federal question of jurisdiction.  We would want to reserve

16  the opportunity to brief that, if we find ourselves in that

17  highly unusual scenario.

18           Otherwise, petitioner, of course, concurs from

19  Ms. Chung's standpoint delay is less than ideal, there are

20  ongoing harms that are flowing from the policy that she seeks

21  to challenge.  So in that light, we are very grateful for the

22  Court's re-affirmation of the order barring ICE from detaining

23  her pending further order of the Court.  And our understanding

24  is that order remans in place.

25           THE COURT:  It is.

P5T4CHUC

1          MR. KASSEM:  And with that, next Thursday would be

2     acceptable from our standpoint.  We look forward to hearing

3     back from the government on what it is they'll bring to court

4     on Thursday.

5          MR. WATERMAN:  And for the government, your Honor,

6     just for the record, we would object to a continuation of the

7     TRO.  We understand, your Honor, has made a statement on that.

8          As to the next proceeding, Thursday is certainly fine

9     for the government.  And we will endeavor to file a letter with

10    the Court should we receive information before that date.

11         MR. KASSEM:  Your Honor, does counsel for the

12    government wish to receive the G-28 from us today?

13         MR. WATERMAN:  I don't know that I'm authorized to

14    accept that instead of providing it through the normal channels

15    with DHS.  I don't have authorization at this time to accept

16    that.

17         THE COURT:  I think, Mr. Waterman, there is going to

18    be a limit to how much you can draw a line when you are in

19    court representing a client.  It is, you know, not unusual in

20    the world of civil litigation for lawyers to accept service of

21    complaints and other documents.  And indeed, as you know, just

22    on the federal rules of civil procedure, once the case is

23    commenced, that's the way documents are exchanged.  They're

24    served on lawyers.  You know, I just think there is going to be

25    sort of a limit.  This, I don't think is a deal breaker because

P5T4CHUC

1    from my perspective the willingness of counsel to accept the

2    notice to appear is sufficient, essentially, for resolution of

3    the arguments concerning whether they are objecting to

4    commencement.  And if the only reluctance to agree to this is

5    that it will create habeas jurisdiction, I find that extremely

6    unattractive.

7            MR. WATERMAN:  Sure.  Yes, your Honor.  I understand

8    accepting service.  This is not a document within the context

9    of this case.  It's an administrative document for the

10    administrative purposes.  I want to make sure that I have

11    authorization to accept that on behalf of the client agency.

12            THE COURT:  But in the cases that have been decided,

13    there is reference to the notice to appear.  So, you know, the

14    reality is you have an address.  You can utilize the statute,

15    do it by mail.  You have an alternative to serve it on counsel,

16    that should be sufficient.

17            How about 1:45 on Thursday, is that all right?  Okay?

18            MR. KASSEM:  That's fine for us, your Honor.

19            MR. WATERMAN:  It's fine for the government.

20            THE COURT:  Okay.  Anything further at this time?

21            MR. KASSEM:  Nothing further from our end.  Petitioner

22    thanks the Court.

23            MR. WATERMAN:  Not from the government.  Thank you.

24            THE COURT:  Very good.  Thank you all.

25            (Adjourned)